UNITED STATES of America

v.

DEVIL'S HOLE, INC.

UNITED STATES of America

v.

HECLA MACHINERY AND EQUIPMENT COMPANY.

Civ. A. Nos. 80–4553, 80–4554.

United States District Court,
E. D. Pennsylvania.

Sept. 16, 1982.

K. Robert Conrad, Philadelphia, Pa., for defendants.

Peter F. Vaira, U. S. Atty., James G. Sheehan, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

### FINDINGS OF FACT, DISCUSSION, CONCLUSIONS OF LAW AND ORDER

HUYETT, District Judge.

Following a non-jury trial, the submission of post-trial memoranda, and oral argument, I make the following findings of fact and conclusions of law pursuant to Fed.R. Civ.P. 52(a).

*Findings of Fact*

1. Anthracite silt is the residue matter following the wet washing of freshly mined coal or processed coal at the mine site. This residue matter is slushed into silt dams. (Stipulation ¶ 1)[1]

2. Scalp screening involves passing anthracite silt over a screen to remove only large rocks, tree limbs and other large debris from anthracite silt. (Stipulation ¶ 2)

3. Devil's Hole, Inc. is a Pennsylvania corporation with a registered office and place of business at R.D. 1, New Ringgold, Schuylkill County, Pennsylvania. (Stipulation 80–4553 ¶ 3)

4. Devil's Hole, Inc. is engaged in the removal, scalp screening where necessary, and loading of anthracite silt from silt dams. (Stipulation 80–4553 ¶ 4)

5. Anthracite silt is removed, scalp screened where necessary, and loaded by Devil's Hole, Inc. at PP&L's Indianhead Deposit located East of Tremont, off Route 209, in the Townships of Frailey and Reilly, Schuylkill County, Pennsylvania. (Stipulation 80–4553 ¶ 5)

6. Anthracite silt loaded by Devil's Hole, Inc. was shipped to one of the following three locations:

(a) The Sunbury Steam Electric plant of PP&L in Monroe Township, Snyder County.

(b) The Holtwood Steam Electric Station of PP&L located in Martic Township, Lancaster County.

(c) The Buck Run Storage pile located near Heckscherville, Schuylkill County.

(Stipulation 80–4553 ¶ 6)

7. Devil's Hole, Inc. has made no payments to the Abandoned Mine Reclamation Fund established under the Surface Mining Control and Reclamation Act of 1977 on account of the removal of anthracite silt. (Stipulation 80–4553 ¶ 9)

1. Unless otherwise stated, the stipulation applies to both cases.

8. Hecla Mining & Machinery Co. (Hecla) is a Pennsylvania corporation with a registered office and place of business at R.D. 1, New Ringgold, Schuylkill County, Pennsylvania. (Stipulation 80–4554 ¶ 3)

9. Hecla is engaged in the removal, scalp screening where necessary, loading and delivery of anthracite silt from silt dams. (Stipulation 80–4554 ¶ 4)

10. Anthracite silt is removed, scalp screened where necessary, and loaded by Hecla in Schuylkill County, Dauphin County and Carbon County, Pennsylvania. (Stipulation 80–4554 ¶ 5)

11. Anthracite silt loaded by Hecla was shipped by it to one of the following three locations:

(a) The Sunbury Steam Electric plant of PP&L in Monroe Township, Snyder County.

(b) The Holtwood Steam Electric Station of PP&L located in Martic Township, Lancaster County.

(c) The Buck Run Storage pile located near Heckscherville, Schuylkill County.

(Stipulation 80–4554 ¶ 6)

12. Hecla has made no payments to the Abandoned Mine Reclamation Fund established under the Surface Mining Control and Reclamation Act of 1977 on account of the removal of anthracite silt. (Stipulation 80–4554 ¶ 9)

13. In order to conduct their anthracite silt removal operations, both defendants obtained permits from the Commonwealth of Pennsylvania, Department of Environmental Resources. (Stipulation ¶ 7; Gov.Ex. 7a & 7b)

14. Both defendants filed forms with the Office of Surface Mining of the Department of the Interior acknowledging that they were mining anthracite coal. (Testimony of Gangloff; Gov. Ex. 3)

15. Stratton C. Schaeffer is a professional engineer, licensed by the Commonwealth of Pennsylvania who specializes in studies relating to the evaluation and use of energy sources, especially coal. He testified for the government as an expert on coal

utility, preparation and mining. (Testimony of Schaeffer)

16. Mr. Schaeffer possesses extensive academic and practical experience in his field. He testified in a forthright manner. He was a highly credible witness.

17. Based upon the practice of this industry, defendants are engaged in a "second mining" or "refuse mining" operation, i.e., reclaiming anthracite silt from culm banks. (Testimony of Schaeffer)

18. Another name for the operation carried on by the defendants is "bank mining." (Testimony of Schaeffer)

19. Reclaiming coal is not limited to the extraction of large coal pieces from culm banks, but rather includes the removal of anthracite silt. (Testimony of Schaeffer)

20. All second mining operations in the anthracite region since 1977 result in environmental benefits because federal and state laws require it. (Testimony of Schaeffer)

21. Gene G. Gangloff is the chief executive of both defendants. He directs their daily operations. (Testimony of Gangloff)

22. Gangloff completed several forms on behalf of the defendants which are required of those engaged in coal mining operations. (Testimony of Issaacson; Gov. Ex. 3)

23. At his deposition, Gangloff repeatedly referred to anthracite silt as "coal." Subsequently, he amended his answers by way of an errata sheet changing many references from "coal" to "anthracite silt." (Testimony of Gangloff)

24. In his testimony regarding "blending," Gangloff referred to anthracite silt as "coal." (Testimony of Gangloff)

25. Gangloff conceded that anthracite silt is sometimes referred to in contracts in the trade as coal. (Testimony of Gangloff)

26. Contracts between the defendants and P,P,&L which deal with anthracite silt refer to the silt as coal. (Testimony of Gangloff; Gov. Ex. 6; also Gov. Ex. 9a)

27. When purchasing anthracite silt, Gangloff accepts a maximum moisture con-

tent of 20 to 22% and a maximum ash content of 40%. These are the same limits upon the silt which P,P,&L will accept from him. (Testimony of Gangloff)

28. The anthracite silt which defendants load and transport for P,P,&L is used at P,P,&L's coal-fired steam generators. The anthracite silt is introduced into the steam boilers to generate electricity without any treatment. (Testimony of Gangloff; Stipulation ¶ 8)

29. Mr. Schaeffer stated in his expert opinion based upon how anthracite silt is produced, and on its BTU and carbon content, it is coal. (Testimony of Schaeffer)

30. Dr. Alan Davis who also testified on behalf of the government as an expert is a professor at the Pennsylvania State University and Director of the Anthracite Division of the Coal Research Section. (Testimony of Davis)

31. Dr. Davis was fully qualified to give his scientific opinion on the composition of anthracite silt based on extensive academic and practical experience. He testified in a forthright manner. He was a highly credible witness.

32. In Dr. Davis's opinion, anthracite silt which is less than 50% ash on a dry basis is coal and is of anthracite rank. (Testimony of Davis)

33. The anthracite silt shipped by defendants to P,P,&L does not exceed 40% ash. (Finding of Fact No. 27)

34. Numerous tests including a reflectants analysis, a point count analysis and others establish that anthracite silt with the ash content described by Dr. Davis is coal. These tests were based upon an adequate sample. (Testimony of Davis)

35. ASTM Standard 388–77 provides for the ranking of anthracite coal based upon its BTU content and fixed carbon content. (Testimony of Davis)

36. Under ASTM Standard 388–77, anthracite silt as described by Dr. Davis is properly ranked as anthracite coal. (Testimony of Davis)

37. With sufficient heat for ignition, anthracite silt is combustible alone. (Testimony of Schaeffer, Davis)

38. P,P,&L does not have the technology to safely burn silt alone but must mix it with prepared anthracite. However, this is because of the type of boilers used by P,P,&L. (Testimony of Snyder)

39. Removal of anthracite silt from slush banks or silt banks is the removal of coal from a deposit that is not in its original geological location. (Testimony of Schaeffer)

40. Removal of anthracite silt constitutes a surface coal mining operation. It is the reclamation of coal. (Testimony of Schaeffer)

41. Although the silt banks in question were created before 1977, it is the defendants' current activities of removal, loading, and transporting the silt which constitute surface coal mining. The defendants' activities which have taken place since October, 1977 are subject to the fee. (Testimony of Gangloff, Gov. Ex. 2a & 2b)

42. The defendants offered no expert testimony on the issue of what is coal mining. The defendants offered no expert testimony on whether anthracite silt is coal. The defendants presented only one witness who testified that in order for P,P,&L to safely burn silt, it must be mixed with prepared anthracite. This witness, Mr. Colin Snyder, who supervised the purchase of fossil fuels, could only testify with respect to P,P,&L's practices and was not qualified to give an industry-wide opinion on the combustibility of coal. In addition, Mr. Snyder, a middle-echelon employee, was an interested witness whose testimony is not entitled to great weight. Mr. Snyder's employer has agreed to indemnify the defendants if they lose in this lawsuit. (Testimony of Snyder, Gangloff)

*Discussion*

The Surface Mining Control and Reclamation Act of 1977 (Act), 30 U.S.C. § 1201 et seq., was passed to remedy environmental damage caused by past coal mining and to regulate future coal mining. As part of

its remedial function, the Act established a trust fund to be used to reclaim land damaged by coal mining prior to the effective date of the Act. The trust is funded by a reclamation fee (sometimes referred to as the tax) to be paid on coal produced after the effective date of the Act. Specifically, the Act provides

> All operators of coal mining operations subject to the provisions of this chapter shall pay to the Secretary of the Interior, for deposit in the fund, a reclamation fee of 35 cents per ton of coal produced by surface coal mining and 15 cents per ton of coal produced by underground mining or 10 per centum of the value of the coal at the mine, as determined by the Secretary, whichever is less, . . . .

30 U.S.C. § 1232(a).

Thus, the Act imposes the burden of remedying the abuses of past coal mining on those who gain an economic benefit from coal mining today. H.R.Rep.No. 95–218 at 136, U.S.Code Cong. & Admin.News 1977, p. 593. The Act provides exceptions for some discrete instances of surface mining operations. *See* 30 U.S.C. § 1239. On the whole, however, Congress evidenced an intent that the statute be interpreted broadly by providing a broad definition of type of operations subject to the fee. For example, the definition of "surface coal mining operations" includes not only traditional mining activity but also methods of extracting coal that are not traditionally considered mining, such as *in situ* distillation or retorting. *See* 30 U.S.C. § 1291(28). The Act's definition of surface coal mining operations specifically includes silt banks (or culm banks) like those involved in this case. *Id.* at § 1291(28)(B).

The Act makes the fee payable by "operators." *Id.* § 1232(a). An operator is defined as one "engaged in coal mining who removes or intends to remove more than two hundred and fifty tons of coal from the earth by coal mining . . . ." *Id.* § 1291(13). The Act does not define either coal or coal

mining. The definition of "surface coal mining and reclamation operations" incorporates the definition of "surface coal mining operations" previously discussed.

■ The Secretary of the Interior pursuant to his authority under the Act issued regulations. The recently amended regulations were issued on June 30, 1982. These regulations elaborate upon the definitions provided by the Act and provide some definitions which the Act does not include but which are nonetheless in keeping with the statutory language. The regulations provide that

> Reclaimed coal means coal recovered from a deposit that is not in its original geological location, such as refuse piles or culm banks or retaining dams and ponds that are or have been used during the mining or preparation process, and stream coal deposits. Reclaimed coal operations are considered to be surface coal mining operations for fee liability and calculation purposes.

47 Fed.Reg. § 870.5. Given the broad definition of coal mining operations included in the Act, the fact that the definition in the Act refers to culm banks and in light of the fact that Congress was aware of culm banks but did not include them among the specific exceptions granted, I conclude that this regulation is fully supported by the statutory language.[2]

■ I have found that anthracite silt is coal despite testimony that if an order for coal is placed, the defendants could not satisfy the order by delivering silt. This testimony merely demonstrates the limits of our language. It reveals that coal has both a limited and general meaning in this industry. In the limited sense, coal as used in the hypothetical order means pure coal. However, it is clear that the defendants and P,P,&L when speaking of coal generally include anthracite silt. Nothing in the Act or its legislation history suggests that Congress was speaking of coal in a limited sense.

2. The defendants did not challenge the regulations relating to reclaimed coal because it was their contention that their operation does not

qualify as reclaiming coal. I have rejected defendants contention as a matter of fact.

■ I have also found that defendants are engaged in surface coal mining. I made this finding based upon the factual evidence of how the silt banks were produced and how the silt is now removed. In addition, I relied upon the expert opinion of Mr. Schaeffer who testified for the government. I note that Mr. Schaeffer's opinion on the mining issue and his and Dr. Davis's opinions on whether silt is coal were uncontradicted by any expert testimony from the defendants.

■ With respect to the extent of defendants liability, I note that government exhibits 2a and 2b include the amounts of anthracite silt on which the fee is owing. Although these exhibits include amounts removed, loaded or delivered after the dates in the complaints, the complaints may be deemed amended to conform to the proof of trial. Fed.R.Civ.P. 15(a). I am satisfied that the defendants were not prejudiced in maintaining their defense by the admission of this evidence.

*Conclusions of Law*

■ 1. The defendants are operators of coal mining operations within the meaning of 30 U.S.C. § 1232.

2. The anthracite silt removed, loaded, and delivered by the defendants to P,P,&L is coal produced by surface coal mining within the meaning of 30 U.S.C. § 1232.

3. The defendants are liable for a reclamation fee of 35 cents per ton of coal or 10% of the value of the coal at the mine, as determined by the Secretary, whichever is less.

4. Judgment on the issue of liability will be entered in favor of the plaintiff.