**Frank J. GALGAY, et al., Plaintiffs,**

v.

**Gene GANGLOFF, et al., Defendants.**

**Civ. No. 86–0683.**

United States District Court,
M.D. Pennsylvania.

Sept. 24, 1987.

A. Richard Caputo, Shea, Shea & Caputo, Wilkes–Barre, Pa., for plaintiffs.

Morey M. Myers, Hourigan, Kluger, Spohrer, Quinn & Myers, Scranton, Pa., Charles E. Wasilefski, Peters and Wasilefski, Harrisburg, Pa., for defendants.

## MEMORANDUM AND ORDER

NEALON, Chief Judge.

Plaintiffs instituted this action on May 16, 1986 against defendants Gene Gangloff individually and d/b/a Gangloff Brothers; Gangloff Brothers; Devil's Hole, Inc.; and Hecla Machinery and Equipment Company, alleging violations of a contract between an employer and a labor organization representing employees in an industry affecting commerce within the meaning of § 301(a) of the Labor Management Relations Act of 1947 (LMRA). Plaintiffs seek to collect delinquent contributions allegedly owed to the plaintiff fund, a multi-employer plan within the meaning of the Employment Retirement Income Security Act (ERISA). Specifically, they aver that through a recently developed process known as scalp screening, defendants were able to obtain anthracite silt from culm, previously a waste by-product from coal mining not usable as fuel, and to sell the anthracite silt as fuel. The alleged delinquent employer contributions owed by defendants to the plaintiff fund stem from the sale of this anthracite silt.

Defendants filed a Motion to Dismiss the original Complaint in June 1986. After the parties briefed the relevant issues, the court by Memorandum and Order dated September 16, 1986 denied the Motion to Dismiss and directed plaintiffs to file an amended complaint. Plaintiffs submitted an Amended Complaint on October 6, 1986.

Defendants filed a Motion to Dismiss the Amended Complaint on October 27, 1986 and a Brief in Support thereof on November 26, 1986. Plaintiffs filed a Brief in Opposition on December 19, 1986, and defendants submitted a Reply on January 22, 1987. In an Order issued on March 10, 1987, the court held defendants' Motion to Dismiss the Amended Complaint in abeyance, noting that the parties had requested deferment of any ruling on the pending motion due to serious settlement negotiations which were then underway. The court was recently informed that these negotiations have failed to produce an accord. Therefore, defendants' Motion to Dismiss

the Amended Complaint is now ripe for disposition. For the reasons set forth below, the motion will be denied except as it pertains to Counts VII through IX of the Amended Complaint.

## STANDARD OF REVIEW

In examining a motion to dismiss, a district court should confine its inquiry to the pleadings and should liberally construe the complaint in favor of the plaintiffs. *See Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Hooten v. Pennsylvania College of Optometry*, 601 F.Supp. 1151 (E.D.Pa.1984). The material allegations of the complaint should be regarded as admitted, and the complaint should not be dismissed unless it appears that the plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. *See Conley v. Gibson, supra; District Council 47 v. Bradley*, 795 F.2d 310 (3d Cir.1986).

## DISCUSSION

### I.

In Count III(a) of their Amended Complaint, plaintiffs allege that all defendants are liable to them under the single employer doctrine.[1] In particular, plaintiffs aver that Gene Gangloff is the chief executive officer of each of the defendant enterprises, that he controls both the daily operations and the labor relations of each enterprise and that he made the decision for each defendant enterprise not to report the production of scalp-screened anthracite silt to plaintiffs as well as the decision not to pay contributions to the plaintiff fund from the sale of anthracite silt. Plaintiffs further claim in Count III(a) of their Amended Complaint that all of the defendants conducted the same or similar business, operated out of the same office and shared

equipment, assets and employees. Plaintiffs conclude that the defendants were so intertwined as to constitute a single employer.

Defendants seek to have Count III(a) dismissed as to Gene Gangloff. They argue that the single employer theory cannot be used to impose liability under ERISA or the LMRA on individual shareholders or officers of a corporation, merely by virtue of their status, for delinquent contributions to an employee retirement fund.[2] Defendants point out that ERISA obligates only employers to make contributions to multi-employer plans. 29 U.S.C. § 1145. The term "employer" is defined in ERISA as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5). The definition of person, in turn, does not include corporate officers or shareholders but does include "an individual, partnership, joint venture, [and] corporation...." 29 U.S.C. § 1002(9). Relying upon the above definitions, defendants maintain that liability under ERISA cannot be imposed upon individual officers and shareholders under the single employer theory by virtue of their status within the corporation and that, except for situations where the alter ego doctrine applies, judgment cannot be rendered against individuals unless they are employers and parties to the bargaining agreement. Defendants add that Gene Gangloff is neither a named party to the collective bargaining agreement nor a business enterprise in the form of a single employer, so the LMRA affords no independent cause of action against him. *See* 29 U.S.C. § 185(a).

█ The defendants correctly state the relevant law that personal financial responsibility may not be imputed under ERISA or the LMRA to shareholders or officers merely because of the size of their owner-

---

1. In Count I of their Amended Complaint, plaintiffs brought a claim under § 301 of the LMRA against defendant Hecla Machinery and Equipment Company. In Count II, plaintiffs brought a similar claim, as well as an ERISA claim, against defendant Devil's Hole, Inc. Hecla Machinery and Equipment Company and Devil's Hole, Inc. are the only alleged signatories to the

Anthracite Wage Agreement among the defendants.

2. Defendants also maintain that partners cannot be held liable under the single employer theory merely because of their status as a partner, but the applicable case law cited by defendants does not discuss the potential liability of partners.

ship or the extent of control which they exercise over a corporation. *See Solomon v. Klein,* 770 F.2d 352, 354 (3d Cir.1985); *International Molders v. United Foundries, Inc.,* 644 F.Supp. 499, 505 (M.D.Pa. 1986) (Nealon, C.J.); *Amalgamated Cotton Garment v. J.B.C. Company of Madera, Inc.,* 608 F.Supp. 158, 167 (W.D.Pa.1984); *Combs v. Indyk,* 554 F.Supp. 573, 575 (W.D.Pa.1982). Commenting upon the definition of "person" in ERISA, the Court of Appeals for the Third Circuit stated:

> There is no indication that Congress intended to expose corporate officers to liability for their employers' violations of ERISA; in fact, the exclusion of corporate officers from the extensive enumeration of persons points in the opposite direction.

*Solomon v. Klein, supra,* at 354 (quoting *Combs v. Indyk, supra,* at 575). Moreover, the principle of limited personal liability is fundamental to corporate law, and the shield from personal liability serves as one of the major purposes for doing business in a corporate form. *Connors v. P & M Coal Company,* 801 F.2d 1373, 1377 (D.C.Cir.1986).

■ The court, however, disagrees with defendants' contention that the above legal principles warrant the dismissal of Count III(a) as to Gene Gangloff. First, in paragraph 2 of their Amended Complaint, plaintiffs identify Gene Gangloff, individually, as an employer within the meaning of ERISA and the LMRA.[3] In contrast, defendants, without providing any affidavits or other supporting evidence, indicate that Gene Gangloff is not an employer in his individual capacity. Thus, there exists a factual dispute on this point. In reviewing a motion to dismiss, of course, the court must concentrate on the pleadings and must regard all material allegations as admitted. For purposes of the present motion, Gene Gangloff will be considered as an employer in his individual capacity. As such, he may be included by plaintiffs under the single employer theory since his inclusion therein does not stem from his role as a corporate officer or shareholder.

■ Secondly, as defendants recognize, an important exception to the rule against personal liability under ERISA and the LMRA for delinquent corporate contributions to an employee retirement fund arises in situations where the alter ego doctrine applies. *See Solomon v. Klein, supra,* at 353; *International Molders v. United Foundries, Inc., supra,* at 505 ("individual liability may be imposed under the LMRA if the individual defendants were acting as alter egos of the defendant employer"); *Amalgamated Cotton Garment v. J.B.C. Company of Modera, Inc., supra,* at 167 (individual defendants are not liable under ERISA unless they were acting as alter egos of the employer). In Count III(b), plaintiffs allege that Gene Gangloff, individually, is an alter ego of the other defendants. Defendants contend that plaintiffs have failed to state a claim under the alter ego doctrine, but as discussed *infra,* the court finds that plaintiffs have sufficiently pled an alter ego relationship among the defendants. Therefore, Gene Gangloff could be held personally liable under the single employer theory should plaintiffs prove that he was the alter ego of one or more of the defendant corporations which allegedly are signatories of the collective bargaining agreement.

The court recognizes the strong precedent within this circuit that corporate officers and shareholders are normally not subject to liability under ERISA and the LMRA for delinquent corporate contributions to an employee retirement fund and holds only that plaintiffs have made sufficient allegations in the Amended Complaint of personal liability on the part of Gene Gangloff to withstand defendants' Motion to Dismiss. Should discovery reveal no evidence that Gene Gangloff was at any relevant time either an employer in his individual capacity or an alter ego of the other defendants, the court expects that

---

**3.** In paragraph 2 of their Amended Complaint, plaintiffs also identify Gene Gangloff as a partner in Gangloff Brothers. The court notes that the allegations contained in paragraph 2 are vague, but the court must construe the Amended Complaint in favor of plaintiffs in examining defendants' Motion to Dismiss.

plaintiffs in good faith will reexamine their claims against Gene Gangloff. In any event, should defendants conclude that no factual dispute exists as to Gene Gangloff's personal liability, they may after discovery submit a motion pursuant to Fed. R.Civ.P. 56, at which time the court's review would expand beyond the pleadings to the underlying factual record.

## II.

In Count III(b) of their Amended Complaint, plaintiffs incorporate their allegations from Count III(a), *i.e.*, that all defendants conducted the same or similar business, operated out of the same office and shared equipment, assets and employees and that each defendant enterprise was controlled by Gene Gangloff. Plaintiffs then assert that the defendants are so intertwined that each is the alter ego of the other.

By way of background, the court in its September 16, 1986 Memorandum and Order indicated that it was unclear whether plaintiffs were claiming that, in addition to the single employer theory, the alter ego doctrine applied to this case. The court listed the relevant factors for applying the alter ego doctrine and afforded plaintiffs "an opportunity to more completely set forth the basis for imposing joint and several liability." *See* document 11 of the record at 13. The court noted that "defendants may challenge either theory by appropriate motion *when a proper factual record exists* (emphasis added)." *Id.* at 13 n. 6. In their subsequent Amended Complaint, plaintiffs asserted the single employer theory in Count III(a) and the alter ego theory in Count III(b).

Defendants have moved to dismiss Count III(b), arguing that in contravention of the court's September 16, 1986 Memorandum and Order, plaintiffs have failed to sufficiently plead any of the elements of the alter ego theory. Citing *American Bell, Inc. v. Federation of Telephone Workers*, 736 F.2d 879, 886 (3d Cir.1984), defendants maintain that the allegations that they shared assets, employees, etc. do not satisfy the alter ego doctrine which requires

that "specific, unusual circumstances" must be pled. Defendants also assert that the Amended Complaint does not provide fair notice to them with respect to plaintiffs' alter ego claim.

In response, plaintiffs argue that their allegations are sufficient to meet the standards of both the alter ego doctrine and the notice requirements of the Federal Rules of Civil Procedure. They also maintain that the cases cited by defendants are inapplicable because those decisions are based upon developed factual records. Plaintiffs further claim that the facts necessary to pierce the corporate veil can only be obtained through discovery and that they should be given the opportunity to develop a factual record. They also allude to unspecified facts elicited in *United States v. Devil's Hole, Inc.*, 548 F.Supp. 451 (E.D.Pa. 1982), *aff'd*, 747 F.2d 895 (3d Cir.1984), but to the extent that these facts are not averred in the Amended Complaint, the court will not consider them in reviewing defendants' Motion to Dismiss.

As noted by this court in its September 16, 1986 Memorandum and Order, the following are relevant factors in determining the applicability of the alter ego doctrine:

1. Failure to observe corporate formalities;

2. Nonpayment of dividends;

3. Insolvency of the debtor corporation;

4. Siphoning of funds from the corporation by the dominant shareholders;

5. Nonfunctioning of other officers and directors;

6. Absence of corporate records;

7. The corporation is a mere facade for the operation of the dominant shareholder or shareholders;

8. Gross undercapitalization.

*United States v. Pisani*, 646 F.2d 83, 88 (3d Cir.1981). The above list of factors is not conjunctive, *i.e.*, not all of these factors need to be present for the alter ego doctrine to apply. Furthermore, this list of factors is not exclusive. *American Bell, Inc. v. Federation of Telephone Workers*, *supra*, at 886. There may be "a less pre-

cise notion that the corporations simply acted interchangeably and in disregard of their corporate separateness." *Id.* at 886–87 (quoting *Publicker Industries, Inc. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1070 (3d Cir.1979)). Nonetheless, there must exist "specific, unusual circumstances" for the alter ego doctrine to apply. *Id.* at 887.

■ Although plaintiffs' allegations with respect to the alter ego doctrine are limited in both their number and scope, the court is unable to say that it appears that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief. Plaintiffs aver, *inter alia*, that defendants shared assets and employees, and, if proven, this circumstance would certainly serve as evidence of an alter ego relationship.

The court also finds that the legal authorities relied upon by defendants are inapplicable to this case. For example, in *American Bell, Inc. v. Federation of Telephone Workers, supra*, the circuit court found that the district court erred in piercing the corporate veil "only because of the parent-subsidiary relationship." *Id.* at 887. In *Nobers v. Crucible, Inc.*, 602 F.Supp. 703 (W.D.Pa.1985), the court held that bare allegations of joint action by one corporation which acquired an independent, fully functioning subsidiary are, by themselves, insufficient to justify piercing the corporate veil. Construing the Amended Complaint in favor of plaintiffs as required, the court finds that they allege more than merely a parent-subsidiary relationship among or joint action by the defendants. Moreover, the court concludes that the Amended Complaint fulfills the liberal notice provisions of Fed.R.Civ.P. 8(a). *See generally Rannels v. S.E. Nichols, Inc.*, 591 F.2d 242, 247 (3d Cir.1979); and *Usery v. Chef Italia*, 540 F.Supp. 587, 591 n. 10–11 (E.D.Pa.1982).

In summation, plaintiffs' allegations regarding the alter ego doctrine survive the circumscribed standard of review which this court utilizes in examining motions to dismiss. As noted in the court's previous Memorandum and Order, defendants are free to challenge the applicability of the alter ego doctrine once a proper factual foundation has been established.

### III.

In Count VI, plaintiffs aver that all defendants are fiduciaries over the delinquent contributions to the plaintiff fund pursuant to § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A), and that all defendants breached their fiduciary duties by not depositing the delinquent contributions into the plaintiff fund. Defendants move for dismissal from Count VI of those defendants who are not signatories of the collective bargaining agreement. Returning to the same arguments which they previously asserted in relation to Counts III(a) and III(b), defendants contend that Gene Gangloff could not be held personally liable and that plaintiffs failed to sufficiently plead the alter ego theory, so that no basis exists to impose liability upon nonsignatories as fiduciaries. Inasmuch as the court has denied defendants' Motion to Dismiss on Counts III(a) and III(b), the motion will likewise be denied as it relates to nonsignatories of the collective bargaining agreement named in Count VI.

### IV.

■ Defendants have moved to dismiss Counts IV, V and VI in their entirety. Count IV is brought against Hecla Machinery and Equipment Company; Count V against Devil's Hole, Inc.; and Count VI against all defendants. In each of these counts, plaintiffs aver that the respective defendant or defendants are fiduciaries under § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A) and are liable to plaintiffs for breaching their fiduciary duties. ERISA provides the following definition of the term "fiduciary":

> [A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or *exercises any authority or control respecting management or disposition of its assets,* (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to

any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan (emphasis added).

29 U.S.C. § 1002(21)(A). The Anthracite Wage Agreement, to which all defendants are allegedly either directly or indirectly a party, provides, "Title to all the monies paid into and/or *due and owing* said fund shall be *vested* in and remain exclusively in the trustees of the fund (emphasis added).…" *See* Exhibit A attached to document 12. The trust agreement contains similar language. *See* Exhibit C attached to document 12. Utilizing the above language, plaintiffs reason that employer contributions to the plaintiff fund become vested assets of the fund once they are "due and owing" as opposed to when those monies are actually paid. By failing to turn over to the fund contributions for the scalp-screened anthracite silt when they became due and owing, the defendants purportedly exercised "authority or control respecting management or disposition of [the plaintiff fund's] assets" and thus became fiduciaries under 29 U.S.C. § 1002(21)(A)(i). According to plaintiffs, defendants breached their fiduciary duties by not reporting the sale of scalp-screened anthracite silt and by retaining for their own benefit the royalties owed to the plaintiff fund, thereby failing to act "solely in the interest of the participants and beneficiaries." *See* 29 U.S.C. § 1104. The issue with respect to Counts IV through VI of the Amended Complaint, then, is whether employer contributions allegedly owed to the plaintiff fund constitute assets of the fund under these circumstances.

Defendants contend that the alleged delinquent contributions are not "assets" of the retirement plan but are merely "receivables" which may or may not be owing to the plaintiff fund depending on the outcome of this litigation. Defendants maintain that they have no influence over the plaintiff fund or over any of its assets. They point out that ERISA's definition of "fiduciary" contains no reference to delinquent contributions or withheld royalty payments. They also note that the scant case law cited by plaintiffs does not stand for the proposition that unpaid contributions to a multi-employer plan constitute assets of the plan. Defendants conclude that plaintiffs' attempt to hold them liable as fiduciaries is without statutory or case law support.

Plaintiffs, on the other hand, focus in their brief upon the relevant language of both 29 U.S.C. § 1002(21)(A)(i) and the Anthracite Wage Agreement. They reiterate their position that under this language, defendants are fiduciaries who failed to deliver a trust asset to the trust.

The court will deny defendants' Motion to Dismiss with respect to Counts IV through VI. As the lack of legal authority cited by the parties indicates, the arguments and circumstances in this case are unusual, and the court by no means holds as a general rule that employers may be liable under ERISA as fiduciaries merely because of delinquent contributions to a multi-employer plan. *Cf. United Independent Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1274, 1280 (7th Cir. 1985) (bargaining commitment is not a plan asset); and *Sutton v. Weirton Steel Div. of Nat. Steel Corp.*, 724 F.2d 406, 411–12 (4th Cir.1983) (neither employers' unfunded liability for contingent benefits nor corporate treasury where an employer has unfunded liability for contingent benefits is a plan asset). The key to the court's ruling in this situation is the clear and undisputed language of the Anthracite Wage Agreement, to which all defendants are allegedly parties either directly or indirectly, stating that title to all monies "due and owing" the plaintiff fund is "vested" in the fund. Thus, the unambiguous language of the Anthracite Wage Agreement makes any delinquent employer contributions vested assets of the plaintiff fund, and by alleging that defendants retained authority and control over such assets, plaintiffs state viable claims under ERISA in Counts IV through VI.

Moreover, Congress did not attempt in the definitional section of ERISA to list potential assets of a pension fund, so the

court is not persuaded by defendants' argument that ERISA's definition of fiduciary contains no particular reference to delinquent employer contributions as a plan asset. As noted above, the language of the Anthracite Wage Agreement, not ERISA, serves as the foundation for the court's finding that the alleged unpaid contributions by defendants are vested assets of the plaintiff fund. As for defendants' contention that whether any contributions from the sale of scalp-screened anthracite silt are "due and owing" is still in dispute, should the issue be decided in favor of plaintiffs, said contributions would be due and owing from the time fixed in the wage agreement, not from the date of judgment.

■ The court's holding is consistent with Congress' intent in enacting ERISA. The legislative history of ERISA reveals that Congress sought to codify traditional principles of fiduciary responsibility from the law of trusts and, in order to further this purpose, Congress adopted a broad, functional definition of the term "fiduciary." S.Rep. 127, 93d Cong., 2d Sess. 27, *reprinted in* 1974 U.S.Code Cong. and Ad. News 4639, 4865. Congress further intended that the term fiduciary should not be defined solely by reference to a particular formal title such as trustee. H.R.Rep. 1280, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. and Ad.News 5103. In addition, because ERISA is a remedial statute, it should be liberally construed in favor of protecting participants in employee benefit plans. *IUE AFL–CIO Pension Fund v. Barker and Williamson, Inc.*, 788 F.2d 118, 127 (3d Cir.1986). Finally, the court's holding exposes defendants to potential liability only for any delinquent contributions on their part since a person is a fiduciary only to the extent that he has authority or control over a pension plan's assets. *See Chicago Bd. of Options Exchange, Inc. v. Connecticut General Life Ins. Co.*, 713 F.2d 254, 259 (7th Cir.1983); *Local Union 2134, United Mine Workers of America v. Powhatan Fuel, Inc.*, 640 F.Supp. 731, 735 (N.D.Ala.1986); and ERISA Interpretive Bulletin 75–8, 29 C.F. R. § 2509.75–8 (1986).

## V.

In Counts VII through IX of their Amended Complaint, plaintiffs raise claims under the Pennsylvania Wage Payment and Collection Law, 43 Pa.C.S.A. § 260.1 *et seq.* Defendants moved to dismiss Counts VII through IX on the grounds that they were preempted by ERISA, and plaintiffs have conceded that Counts VII through IX of their Amended Complaint are preempted in light of the Third Circuit's recent decision in *McMahon v. McDowell*, 794 F.2d 100 (3d Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 473, 93 L.Ed.2d 417 (1986). Accordingly, Counts VII through IX of the Amended Complaint will be dismissed.

An appropriate Order will follow.