TRUSTEES OF THE NATIONAL ELE-
VATOR INDUSTRY PENSION,
Health Benefit and Educational
Funds, Plaintiff,

v.

Andrew LUTYK, Defendant.

No. CIV.A.00–2301.

United States District Court,
E.D. Pennsylvania.

April 13, 2001.

Robert Patrick Curley, O'Donoghue and O'Donoghue, David D. Capuano, O'Donoghue & O'Donoghue, Philadelphia, PA, for Trustees of the National Elevator Industry Pension, Health Benefit and Educational Funds, Plaintiffs.

Louis Rosner, Law Offices of Louis Rosner, Philadelphia, PA, for Andrew Lutyk, Defendants.

## MEMORANDAM AND ORDER

KATZ, Senior District Judge.

This case addresses whether a corporate officer may be personally liable for a company's unpaid contributions to employee benefits funds established under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.* The issue comes before the court by virtue of cross motions for summary judgment by plaintiff, Trustees of the National Elevator Industry (NEI) Pension, Health Benefit and Educational Funds, and defendant, Andrew Lutyk. For the following reasons, the court a) denies plaintiff's motion for summary judgment in full, and b) denies defendant's motion in part and grants it in part. In short, genuine issues of material fact exist with respect to 1) whether unpaid contributions qualify under the terms of the parties' agreements as plan assets, as is required to impose liability on defendant Lutyk as a fiduciary pursuant to 29 U.S.C. §§ 1109(a) and 1002(21)(A)(i), and 2) whether piercing of the corporate veil, which is required to impose personal liability on the defendant, is appropriate in this case. The defendant's motion for summary judgment is granted with respect only to i) the claim brought under 18 U.S.C. § 664, as a civil cause of action does not arise under that statute, and ii) the extent that plaintiff's claims are barred by the three-year statute of limitations.

### I. Background

At all relevant times, defendant Lutyk has been the 100% shareholder, president, and sole officer and director of American Elevator Company, Inc. ("American"). *See* Pl.'s Mot. for Summ. J. Ex. ("Pl.'s Ex.") 4 (jointly executed Uncontested Facts); Pl.'s Ex. 7 (Articles of Incorporation, stockholder certificate). At all relevant times, American has been party to a collective bargaining agreement requiring

American to make certain monthly contributions to three funds established pursuant to ERISA, namely, the NEI Pension Fund, the NEI Health Benefit Fund and the NEI Educational Fund (collectively, the "Funds"). *See* Pl.'s Ex. 4 (Uncontested Facts, stipulating to the establishment of the Funds under ERISA, and to American's obligations to the Funds by virtue of the collective bargaining agreements). In 1998, plaintiff sued American for contribution delinquencies to these Funds, and secured a settlement agreement against the company through a consent judgment in this district. *See* Pl.'s Ex. 1 (Consent Judgment in Civ. Act. No. 98–6544, dated June 15, 1999). Plaintiff claims that pursuant to that settlement agreement, American still owes a total of $240,284.60 in delinquent contributions, interest, attorneys' fees and liquidated damages, and that it also owes an additional $24,666.75 plus interest with respect to further unpaid, post-judgment contributions. *See* Pl.'s Mot. for Summ. J. at 15; Compl. Count I. According to plaintiff, Lutyk used money owed to the Funds for other purposes, draining American of assets. American then ceased operations in November of 1999. *See* Def.'s Ex. 1 ¶ 9 (aff.A.Lutyk). Plaintiff, being unable to procure these funds from the company, therefore brings this separate action against defendant Lutyk, seeking to hold him personally liable under ERISA for the company's unpaid contributions. Plaintiff also seeks an injunction requiring defendant Lutyk to submit timely contributions and reports to the Funds as required under the collective bargaining agreement. *See* Compl. Count II.

## II. Summary Judgment: Legal Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter; rather, it determines whether or not there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In making this determination, all of the facts must be viewed in the light most favorable to, and all reasonable inferences must be drawn in favor of, the non-moving party. *Id.* at 255, 106 S.Ct. 2505.

The moving party has the burden of showing there are no genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Mathews v. Lancaster General Hosp.*, 87 F.3d 624, 639 (3d Cir. 1996). In response, the non-moving party must adduce more than a mere scintilla of evidence in its favor, and cannot simply reassert factually unsupported allegations contained in its pleadings. *See Anderson*, 477 U.S. at 248, 250, 106 S.Ct. 2505; *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548; *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989).

## III. Discussion

### A. Personal Liability Under 29 U.S.C. § 1109(a)

Section 409 of ERISA, 29 U.S.C. § 1109(a), imposes personal liability on "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries." Plaintiff claims that Lutyk is a fiduciary specifically under 29 U.S.C. § 1002(21)(A)(i), which states that "a person is a fiduciary with respect to a plan to the extent (i) he ... exercises any authority or control respecting management or disposition of its assets."

Plaintiff's theory is that as American's sole shareholder and sole director and officer, Lutyk directed monies owed to the Funds for other purposes, making him liable as a plan fiduciary.

In the Third Circuit, there is no general rule conferring fiduciary status merely on the basis of delinquent employer contributions.[1] *See Galgay v. Gangloff,* 677 F.Supp. 295, 301 (M.D.Pa.1987) ("[T]he court by no means holds as a general rule that employers may be liable under ERISA as fiduciaries merely because of delinquent contributions."), *aff'd without opinion,* 932 F.2d 959 (3d Cir.1991) (Table). Rather, because a fiduciary is one who exercises authority over the management or disposition of plan "assets," 29 U.S.C. § 1002(21)(A)(i), a defendant's fiduciary status in cases concerning delinquent contributions often turns on whether the term "assets" includes such delinquent contributions. To answer this question, courts in the Third Circuit look to the terms of the agreement under which the

obligation to pay the contributions arise. *See Galgay,* 677 F.Supp. at 301–02 (delinquent contributions held to be assets pursuant to the terms of the wage agreement); *Young v. West Coast Industrial Relations Assoc., Inc.,* 763 F.Supp. 64, 75 (D.Del.1991) (in case involving 18 U.S.C. § 664, an analogous criminal statute, delinquent contributions held to be debt, not vested assets, where agreement stated that employer was liable for "all arrears in payment" of ERISA plan contributions), *aff'd without opinion,* 961 F.2d 1570 (3rd Cir.1992) (Table); *PMTA–ILA Containerization Fund v. Rose,* No. 94–5635, 1995 WL 461269, at *4 (E.D.Pa. Aug.2, 1995) (delinquent contributions held to be assets where agreement stated that monies "accrued to" fund were "vested" in the fund trustees).[2]

In *Galgay,* the court found that delinquent employer contributions were "assets" based upon the wage agreement's provision that "all the monies paid into and/or *due and owing* said fund shall be

---

1. The Third Circuit's approach to this question contrasts with that of some other Circuits, which follow a general rule that contributions owed but not delivered are plan assets. *See, e.g., Board of Trustees of the Airconditioning and Refrigeration Industry Health and Welfare Trust Fund v. J.R.D. Mechanical Services, Inc. ("Divers"),* 99 F.Supp.2d. 1115, 1120 and n. 4 (C.D.Cal. 1999) (finding that both employer contributions and employee wage deductions are plan assets, regardless of whether such money is ever in fact conveyed to the plan, and explicitly disagreeing with Third Circuit); *United States v. Grizzle,* 933 F.2d 943, 947–48 (11th Cir.1991) (finding that liability attached under analogous criminal statute, 18 U.S.C. § 664, where employer exercised control over employee contributions deducted from their wages).

2. The court notes that none of these cases address 29 C.F.R. § 2510.3–102(a), (c) (1989), which states that plan assets "include amounts (other than union dues) that a participant or beneficiary pays to an employer, or

amounts that a participant has withheld from his wages by an employer, for contribution to the plan as of the earliest date on which such contributions can reasonably be segregated from the employer's general assets," but no later than 90 days after the date such contributions are due. The reason appears to be that none of these cases involved employee wage deductions, which one of the two types of contributions that the regulation addresses; rather, the cases involved only contributions made directly by employers. *Cf. Divers,* 99 F.Supp.2d. at 1120 (making no distinction between employee wage deductions and employer contributions for the purpose of determining whether unpaid amounts are plan assets). In the case at bar, both employee wage deductions and direct employer contributions are at issue. The court follows the reasoning of the other courts in this district in looking primarily to the language of the parties' agreements to determine whether unpaid amounts are "assets," but notes that 29 C.F.R. § 2510.3–102(a) supports the holding that employee wage deductions that have not been delivered to the fund are plan "assets."

*vested in* and remain exclusively in the trustees of the fund." *Galgay,* 677 F.Supp. at 300–01 (emphasis added). This is in accord with holdings in other Circuits addressing agreements containing the same or extremely similar language. *See Hanley v. Giordano's Restaurant,* No. 94–4696, 1995 WL 442143, at *4 (S.D.N.Y. Jul. 26, 1995); *Connors v. Paybra Mining Co.,* 807 F.Supp. 1242, 1246 (S.D.W.Va.1992). Another court in this district held that unpaid contributions were "assets" based on the agreement's provision that "[t]itle to all of the money, property, and income ... accrued to the fund shall be vested in and remain exclusively in the board of trustees of the fund," where "accrued to" was synonymous with "due and owing." *See PMTA–ILA,* 1995 WL 461269, at *4.

In this case, the court looks to the Restated Agreement and Declaration of Trust ("Restated Agreement") and the relevant amendment thereto for each of the Funds in order to determine whether unpaid contributions are considered to be "assets." *See* Pl.'s Exs. 5A (Restated Agreement pertaining to the NEI Pension Fund, and Eighth Amendment thereto adopted Sept. 19, 1990), 5B (Restated Agreement pertaining to NEI Health Benefit Fund, and Seventh Amendment thereto adopted Sept. 19, 1990), and 5C (Restated Agreement pertaining to NEI Educational Fund, and Seventh Amendment thereto [3]).[4] The relevant documents relating to each of the Funds have identical provisions with respect to this issue. *See id.*

A key inquiry is whether unpaid contributions are considered part of the "Trust Fund," as the amended Restated Agreements state that "[n]either ... the Union, Employers, Employees ... shall have any right, title or interest in or to the Trust Fund." Pl.'s Exs. 5A Art. VI Par. 1, 5B Art. VI Par. 1, and 5C Art. VI Par. 1. *See United States v. Panepinto,* 818 F.Supp. 48, 51 (E.D.N.Y.1993) (agreement stating that monies in which "the employer shall [not] have any legal or equitable right, title or interest" were plan assets). The meaning of "contributions" is also significant, as each of the Restated Agreements provides that "nor shall the Employers' contributions and payment in any manner be liable for, or subject to, the debts, contracts, or liabilities of ... Employers." Pl.'s Exs. 5A Art. VI Par. 2 as amended, 5B Art. VI Par. 2 as amended, and 5C Art. VI Par. 2 as amended.

In each of the Restated Agreements, the definition of "Trust Fund" is "the total of contributions *made* by employers and employees ...," Pl.'s Exs. 5A Art. I Par. 8, 5B Art. I Par. 8, and 5C Art. I Par. 8 (emphasis added), which appears to include only contributions made and to exclude contributions owed but not yet made. However, other provisions support the inclusion of unpaid contributions in the Trust Fund. For example, each of the Restated Agreements also provides that "[t]he Trust Fund shall consist of (a) such sums of money *as shall be paid to* [the plan] by the Employers and the Employees as contributions required by the Standard Agreement." Pl.'s Exs. 5A Art. II Par. 2, 5B

---

**3.** The copy of the amendment submitted to the court is unsigned and undated, but its binding effect on the parties has not been disputed. *See* Pl.'s Ex. 5C.

**4.** American was party to two successive collective bargaining agreements with the International Union of Elevator Constructors (IUEC), the first effective from July 9, 1992 to July 8, 1997, and the second effective from July 8, 1997 to July 8, 2002. *See* Pl.'s Ex. 6A. These collective bargaining agreements bound American to the terms of the Standard Agreement between the National Elevator Industry and the IUEC, *see id.,* which in turn bound it to the terms of the Restated Agreements and the amendments thereto. *See* Pl.'s Ex. 6B.

Art. II Par. 2, and 5C Art. II Par. 2 (emphasis added). Furthermore, each of the amendments further states that "[a]ll contributions *shall be made effective* as of the 15th day of each month for the preceding month." Pl.'s Exs. 5A Art. VI Par. 4 as amended, 5B Art. VI Par. 4 as amended, and 5C Art. VI Par. 4 as amended (emphasis added). One definition of "effect" is "[t]he result which an instrument between parties will produce in their relative rights ... as discovered from the language used, the forms employed, or other materials for construing it." BLACK'S LAW DICTIONARY 514 (6th ed.1990). Thus, a genuine issue of material fact exists as to whether, as a matter of contractual interpretation, unpaid contributions are considered "assets" under the terms of the parties' agreements for the purpose of 29 U.S.C. § 1002(21)(A)(i). This determination, in turn, is relevant to whether Lutyk may be held personally liable as a fiduciary pursuant to 29 U.S.C. §§ 1109(a) and 1002(21)(A)(i).

### B. Piercing the Corporate Veil

[4, 5] Even if Lutyk is a fiduciary, plaintiff must also raise a genuine issue of material fact as to whether the corporate veil may be pierced in order to withstand summary judgment, as plaintiff seeks to recover against Lutyk personally. It is clearly established in the Third Circuit that a corporate officer cannot be held personally liable for unpaid contributions to an ERISA fund without piercing the corporate veil. *See Solomon v. Klein*, 770 F.2d 352, 353 (3d Cir.1985)[5]; *see also Central Penn. Teamsters Pension Fund v. McCormick Dray Line, Inc.*, 85 F.3d 1098,

1109 (3d Cir.1996) (dismissing claim against corporate officer on the basis of his position where complaint made no allegations that veil should be pierced). In *Solomon*, the Third Circuit affirmed a lower court's holding that a 50% shareholder, president and chief executive officer was not personally liable for unpaid contributions where no alter ego theory was pursued. *Solomon*, 770 F.2d at 353. The *Solomon* court adopted the reasoning of *Combs v. Indyk*, 554 F.Supp. 573, 575 (W.D.Pa.1982), which relied upon the omission of "corporate officer" in the definition of a "person" who may be held personally liable under 29 U.S.C. § 1109(a). *Solomon*, 770 F.2d at 353; *see also* 29 U.S.C. § 1002(9) (defining "person" as "an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization"). The *Solomon* court further found "nothing in the legislative history to indicate that Congress intended to impose a personal liability on a shareholder or a high-ranking officer of a corporation for ERISA contributions owed by the corporation." *Id.* at 354.

The Third Circuit, in describing the factors to consider in determining whether to pierce a corporate veil, has stated:

> First is whether the corporation is grossly undercapitalized for its purposes. Other factors are failure to observe corporate formalities, non-payment of dividends, the insolvency of the debtor corporation at the time, siphoning of funds of the corporation by the dominant stockholder, non-functioning of

---

5. Although courts in other jurisdictions have explicitly disagreed with the veil-piercing requirement of *Solomon, see, e.g., Rockney v. Pako Corp.*, 734 F.Supp. 373, 378 (D.Minn. 1988) *and citations therein,* many courts are now in agreement with *Solomon. See Antol v. Esposto,* 100 F.3d 1111, 1117 and n. 2 (3d Cir.1996) (recognizing, in a case involving analogous provisions of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, that a majority of courts in other jurisdictions agree with *Solomon,* and citing the 1st, 2nd, 6th, 7th, 8th, 9th, and D.C. Circuits).

other officers or directors, absence of corporate records, and the fact that the corporation is merely a facade for the operations of the dominant stockholder or stockholders. Also, the situation must present an element of injustice or fundamental unfairness, but a number of these factors can be sufficient to show such unfairness.

*United States v. Pisani*, 646 F.2d 83, 88 (3d Cir.1981) (citations, punctuation omitted). The *Pisani* list of factors is not conjunctive, *i.e.*, not all of the factors need to be present for the alter ego doctrine to apply, nor is it an exclusive list. *Galgay*, 677 F.Supp. at 299–300. However, in order to pierce the corporate veil, "specific, unusual circumstances" must exist. *Id.*

In this case, plaintiff claims that Lutyk seeks to "hide behind American Elevator, a paper corporation he knew was inadequately funded," and thereby avoid paying the delinquent contributions. Pl.'s Opp. to Def.'s Mot. for Summ. J. at 26. It is uncontested that Lutyk was the sole officer and director, which establishes the nonfunctionality of other officers or directors. *See* Pl.'s Ex. 4 ¶ 24. Lutyk also admits that "[s]tarting in 1996 ... American experienced difficulty in meeting its financial obligations and a number of benefit contributions were not paid when due.... [American] found itself short of resources and, by late 1999, unable to continue operations.... As cash flow and overall finances worsened, American tried to use available resources to maintain the company as a going concern. My efforts and those of American were not successful."[6] Def.'s Ex. 1 ¶¶ 8–9. Lutyk's affidavit thus suggests that the debtor corporation was insolvent during at least part of the relevant time period. Plaintiff establishes through Lutyk's deposition testimony and corporate and individual financial documents that company funds were used for purposes other than meeting American's obligations to the Funds, such as salaries to himself and family members, insurance premiums, and golf and yacht club dues; however, it does not present evidence that any of these expenses were not legitimate corporate expenses. *See* Pl.'s Mot. for Summ. J. at 2, nn. 3–13, and exhibits cited therein. On the other hand, the fact that Lutyk loaned money to the corporation and that this debt was largely repaid at a time when corporate finances were troubled, *see* Pl.'s Ex. 1 at 134 and Ex. 3 at 57, 92 (corporate tax returns showing reduction of loans from shareholder from $174,881 in 1996 to $24,356 in 1998), is evidence that funds were siphoned and that the corporation was undercapitalized. *See Pisani*, 646 F.2d at 88 (fact that defendant loaned money to the corporation and repaid loans using corporate funds while the corporation was failing, and kept the corporation undercapitalized by loaning it money instead of investing equity in it, was factor favoring piercing of the corporate veil). There is also evidence in the record that many of American's corporate records no longer exist, albeit due to an alleged flood.[7] *See* Pl.'s Mot. for Summ. J. at 17; Pl.'s Ex. 1 at 96–98 (aff. of A. Lutyk, Vol. II). No evidence is presented with respect to the extent of undercapitalization, whether corporate formalities were observed, or whether the company was or became at some point merely a facade; however, plaintiff strenuously argues that the requisite element of injustice or fundamental unfairness is presented in this case. The court finds that, although

---

6. As of October 24, 2000, Lutyk testified that although American was still in existence as a corporate entity, he believed bankruptcy "will be or has been filed." Pl.'s Ex. 2 at 43.

7. Plaintiff has not produced any evidence to rebut defendant's explanation for the missing records.

plaintiff's evidence in this regard is piecemeal, consideration of the *Pisani* factors leads to the conclusion that plaintiff has raised a genuine question of material fact as to whether American served as an alter ego for at least that portion of the relevant time period.

## C. Liability Under 18 U.S.C. § 664

■ Plaintiff also seeks to impose civil liability on the defendant for acts allegedly violating 18 U.S.C. § 664, which imposes criminal liability on "[a]ny person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use or to the use of another, any of the moneys, funds, securities, premiums, credits, property, or other assets of any employee welfare benefit." The court finds that there is no basis for permitting a claim for civil liability pursuant to 18 U.S.C. § 664 and adopts the reasoning of *NYSA–ILA Medical & Clinical Services Fund v. Catucci*, 60 F.Supp.2d 194, 208 (S.D.N.Y.1999) (dismissing civil claim brought under 18 U.S.C. § 664 "[i]n the absence of case law or legislative history indicating that Congress intended to create such a redundant new civil cause of action"). Therefore, summary judgment is granted in favor of the defendant to the extent that a claim is brought pursuant to 18 U.S.C. § 664.

## IV. Statute of Limitations

■ Defendant also claims that the applicable statute of limitations is three years prior to the filing of the complaint, which was filed on May 4, 2000. As ERISA has no applicable statute of limitations, the courts apply the most analogous state statute of limitations. *Vernau v. Vic's Market*, 896 F.2d 43, 45 (3d Cir.1990). Although "claims for delinquent employer contributions ... that are most analogous to claims under the [Pennsylvania Wage Payment and Collection Law, 43 PA. STAT. § 260.9a(g) (WPCL)] are governed by its three-year limitation, and measured from the date the delinquent payment was due." *Gluck v. Unisys Corp.*, 960 F.2d 1168, 1181 (3d Cir.1992). Cases in which the WPCL's three-year limitation has been applied include *Teamsters Pension Trust Fund of Philadelphia and Vicinity v. John Tinney Delivery Service, Inc.*, 732 F.2d 319, 322–23 (3d Cir.1984), where unpaid contributions were sought under the Labor Management Relations Act, 29 U.S.C. § 185. The *Tinney* court stated that "[t]he WPCL governs statebased claims for collection of unpaid wages, which are defined to include contributions to employee benefit trust funds. Because this state cause of action mirrors the federal cause of action alleged here by the Trust Funds, its statute of limitations is clearly more appropriate" than the general six-year state statute of limitations. The three-year limitation was also applied in *Vernau*,[8] where trustees of an ERISA plan sought unpaid employer contributions, and the court concluded that the actions in *Tinney* and *Vernau* were "essentially the same under the LMRA and ERISA." *Vernau*, 896 F.2d at 44. The action in this case is similar to those in *Tinney* and *Vernau*, and therefore, summary judgment is granted in favor of the defendant to the extent that plaintiff's claims are barred by the three-year statute of limitations.

---

**8.** Although the *Vernau* court indicated that it might in the future consider the application of Pennsylvania's four-year limitation period for contracts, 42 PA. CONS. STAT. § 5525, instead of the three-year period applicable to wages, *see Vernau*, 896 F.2d at n. 3, it has not yet overturned its holdings in *Tinney* and *Vernau*. *Cf. Hotel Employees and Restaurant Employees International Union Welfare Fund v. Pub of New Jersey*, 744 F.Supp. 91, 93 (D.N.J.1990) (applying New Jersey contracts statute of limitations to delinquent contribution claims under ERISA); *Stier v. Satnick Development Corp.*, 974 F.Supp. 436, 439 (D.N.J.1997) (same).

## V. Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted only with respect to the claim brought under 18 U.S.C. § 664 and with respect to the statute of limitations.

An appropriate Order follows.

### ORDER

AND NOW, this 13th day of April, 2001, upon consideration of the Motion for Summary Judgment of Plaintiff Trustees of the National Elevator Industry Pension, Health Benefit and Educational Funds (doc. 12), and the response thereto, it is hereby **ORDERED** that the motion is **DENIED.**

**FURTHER ORDERED** that upon consideration of the Defendant's Motion for Summary Judgment (doc. 11), and the response thereto, the motion is hereby **GRANTED** in part and **DENIED** in part. The defendant's motion is granted only to the extent that plaintiff seeks recovery under 18 U.S.C. § 664 and to the extent that plaintiff's claims are barred by the statute of limitations.