IRON WORKERS' LOCAL NO. 25 PENSION FUND; Iron Workers' Local Union No. 25 Individual Account Retirement Fund; Iron Workers' Health Fund of Eastern Michigan; Iron Workers Local No. 25 Vacation Pay Fund; and Iron Workers' Apprentice Fund of Eastern Michigan, Trust Funds Established and Administered Pursuant to Federal Law, Plaintiffs,

v.

McGUIRE STEEL ERECTION, INC. a Michigan Corporation, Dan McGuire, and Daniel McGuire, Individually, Defendants.

No. 03–71056.

United States District Court, E.D. Michigan, Southern Division.

June 9, 2004.

See, also, 2004 WL 3105944.

Michael J. Asher, David J. Selwocki, Sullivan, Ward, Southfield, MI, for Plaintiffs and Defendants.

David A. Monroe, Howell, MI, for Defendants.

## OPINION AND ORDER

ZATKOFF, Chief Judge.

### I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Summary Judgment and to Amend Complaint. Plaintiffs' motion has been fully briefed. In addition, Defendants request summary judgment in their response to Plaintiffs' motion. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decisional process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. L.R. 7.1(e)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Plaintiffs' Motion for Summary Judgment and to Amend Complaint is GRANTED in part. Defendants' request for summary judgment is DENIED.

### II. BACKGROUND

Plaintiffs in this action are a group of multi-employer fringe benefit trust funds, (hereinafter "Plaintiff Funds"), established by collective bargaining agreements entered into between Local Union No. 25, International Association of Bridge, Structural and Ornamental Iron Workers, AFL–CIO, (hereinafter "Union"), and various employers and employer associations whose members employ members of the Union. Plaintiffs filed this action pursuant to § 515 of the Employee Retirement Income Security Act of 1974, (hereinafter "ERISA"), 29 U.S.C. § 1145, against McGuire Steel Erection,

Inc., (hereinafter "Defendant McGuire Steel"), and its president, Dan McGuire, (hereinafter "Defendant McGuire").[1] Plaintiffs seek the recovery of unpaid fringe benefit contributions and other equitable relief.

## A. Facts

On January 11, 1994, Defendant McGuire Steel entered into a collective bargaining agreement, (hereinafter "CBA"), with the Union. Defendant McGuire signed the CBA in his capacity as president of Defendant McGuire Steel. The terms of the CBA require Defendant McGuire Steel to contribute specific sums of money to several employee pension and welfare benefit funds. These employer contributions also include a percentage of employee wages withheld by Defendant McGuire Steel to be contributed to an employee vacation fund. All of these contributions, according to the CBA, must be paid by Defendant McGuire Steel no later than the 26th day of each month. It is undisputed that Defendant McGuire, as president of Defendant McGuire Steel, is responsible for the daily operations of Defendant McGuire Steel, including determining whether to pay benefit contributions to Plaintiff Funds.

Plaintiffs allege that an audit of Defendant McGuire Steel's records, conducted on January 28, 2004, indicates that Defendant McGuire Steel owes $86,849.71 in unpaid benefit contributions for the time period extending from December 2002 to September 2003. Plaintiffs further allege that Defendants owe $5,034.68 in liquidated damages, $5,994.62 in audit fees, $3,213.27 in liquidated damages from prior late payments, and attorney fees in the amount of $15,092.50 for a total amount of $116,184.78 due and owing. Plaintiffs concede, however, that a recent payment of $25,202.00 reduces the $116,184.78 total amount owed to $90,982.78.

To collect the amounts owed, Plaintiffs have filed lien and bond claims against Defendant McGuire Steel's construction projects. According to Defendants, Plaintiffs filed these claims after Defendant McGuire Steel failed to make a benefit contribution on April 26, 2003. Defendants argue, however, that because April 26, 2003, fell on a Saturday, Defendant McGuire Steel's payment on the following Monday, April 28, 2003, was timely; thus, Plaintiffs' lien claims were filed prematurely, according to Defendants. Furthermore, according to Defendants, Plaintiffs' liens have impeded Defendant McGuire Steel's ability to pay the fringe benefit contributions required by the CBA.

## B. Procedural History

Plaintiffs filed their Complaint on March 17, 2003. With their Complaint, Plaintiffs assert that under ERISA they are entitled to an entry of judgment in the amount of all unpaid fringe benefit contributions, liquidated damages, accumulated interest, actual attorney fees, and costs. Plaintiffs also assert that Defendant McGuire is personally liable for breach of fiduciary duty. *See* Compl. at ¶ 22. Before Defendants answered the Complaint, however, the parties entered into a Payment Agreement allowing Defendant McGuire Steel to pay the delinquent contributions over twelve monthly installments of $23,543.73.[2] The

1. The Complaint identifies two individual defendants, Dan McGuire and Daniel McGuire. According to Defendants, however, "Dan McGuire and Daniel McGuire are the same person." Answer to Complaint, at ¶ 3. Plaintiffs have not disputed this assertion and only refer to Dan McGuire. Accordingly, the Court will refer to the president of Defendant McGuire Steel as Dan McGuire only.

2. The Payment Agreement covers $265,512.31 in unpaid contributions outstanding at the time the parties entered into the Payment Agreement.

Payment Agreement requires these monthly installments to be made in addition to the existing monthly benefit contributions required by the CBA.

The Payment Agreement includes two additional provisions relevant to the instant dispute. First, the Payment Agreement contains a provision binding Defendant Dan McGuire to the agreement:

**PERSONAL LIABILITY**

As further consideration for this Payment Agreement, Dan McGuire, personally guarantees this debt and assumes personal liability for its repayment.

Plaintiffs' Ex. C at ¶ 5. Second, the Payment Agreement contains a provision allowing Plaintiffs to continue to collect delinquent contributions under federal or state law:

**AGREEMENT NOT A WAIVER OF RIGHTS**

This Payment Agreement does not constitute a waiver or limitation of the Trustees' rights and/or fiduciary responsibilities to collect delinquent fringe benefit contributions pursuant to state or federal law.

Plaintiffs' Ex. C, at ¶ 4.

The parties entered into the Payment Agreement on April 4, 2003. Shortly thereafter, on May 29, 2003, Plaintiffs moved for conditional dismissal of the Complaint, allowing the matter to be reopened in the event Defendants defaulted under the terms of the Payment Agreement. The Court granted Plaintiffs' motion on May 30, 2003, and dismissed the case without prejudice. Only a few days later, however, on June 6, 2003, Plaintiffs filed a Motion to Reinstate the Complaint alleging that Defendant McGuire Steel failed to comply with the terms of the

Payment Agreement, including failing to make the required payments. The Court granted Plaintiffs' Motion to Reinstate the Complaint on June 25, 2003. Plaintiffs allege that $31,529.72, including interest, remains outstanding under the Payment Agreement.

On August 6, 2003, Plaintiffs obtained a Clerk's Entry of Default as a result of Defendants' failure to answer the reinstated Complaint. On September 3, 2003, Plaintiffs filed a motion for default judgment. Defendants responded to the motion. On October 17, 2003, the Court set aside the Clerk's Entry of Default and denied Plaintiffs' motion for default judgment. On October 28, 2003, Defendants filed an Answer. Defendants also filed a Counter–Complaint on the same day, alleging that Plaintiffs' liens were filed improperly under the Michigan Construction Lien Act, (hereinafter "MCLA"), MICH. COMP. LAWS § 570.1101–.1305.[3]

On February 19, 2004, Plaintiffs filed the instant motion requesting summary judgment on their claims for unpaid benefits and leave to amend the Complaint to add as a defendant McGuire Steel Erectors, Ltd., which is another company owned by Defendant McGuire. Plaintiffs allege that McGuire Steel Erectors, Ltd., should be added based upon statements Defendant McGuire made during a deposition, which Plaintiffs allege demonstrate Defendant McGuire's intention to bind McGuire Steel Erectors, Ltd., to the CBA.

Defendants responded to the motion on March 24, 2004. Their response is also styled as a "Cross–Motion for Summary Judgment." Defendants claim that summary judgment in favor of Plaintiffs is not

---

**3.** Although Defendants filed a Counter–Complaint alleging that Plaintiffs' liens were filed in violation of the MCLA, Defendants have failed to allege any specific violation of the MCLA in response to Plaintiffs' motion for summary judgment. Instead, Defendants claim only that the liens have impeded Defendant McGuire Steel's ability to make timely benefit payments.

warranted because (1) the amount of unpaid contributions alleged by Plaintiffs is incorrect, and (2) Defendants are no longer under any obligation to pay benefit contributions because Plaintiffs filed liens preventing Defendant McGuire Steel from receiving payment from its customers. Defendants further contest the addition of McGuire Steel Erectors, Ltd., as a party-defendant, arguing that Defendant McGuire clearly signed the CBA on behalf of Defendant McGuire Steel only. Defendants offer the same arguments in support of their request for summary judgment. Defendants, however, fail to set forth any legal authority to support any of their contentions.

### III.   LEGAL STANDARD

#### A.   Summary Judgment Standard

Summary judgment is appropriate only if the answers to interrogatories, depositions, admissions, and pleadings combined with the affidavits in support show that no genuine issue as to any material fact remains and the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56(c). A genuine issue of material fact exists when there is "sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). In application of this summary judgment standard, the Court must view all materials supplied, including all pleadings, in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505 (citations omitted).

The moving party bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that establish the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. The non-moving party must do more than show that there is some abstract doubt as to the material facts. It must present significant probative evidence in support of its opposition to the motion for summary judgment in order to defeat the motion for summary judgment. *See Moore v. Philip Morris Companies*, 8 F.3d 335, 339–40 (6th Cir.1993).

#### B.   Standard Applicable to Pleading Amendments

Leave to file an amended complaint shall be freely given when justice so requires. *See* FED. R. CIV. P. 15(a). To deny a motion for leave to amend a complaint the Court must provide a reason for denying the motion, such as undue delay, undue prejudice to the opposing parties, or because the amendment would be legally futile. *See Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). When considering a motion to amend, a court should be guided by the underlying purpose of allowing amendments to facilitate a decision on the merits, rather than a decision based on procedural technicalities. *See Foman*, 371 U.S. at 181, 83 S.Ct. 227.

### IV.   ANALYSIS

#### A.   Plaintiffs' Motion to Amend

Plaintiffs contend that McGuire Steel Erectors, Ltd., should be added as a party-defendant. It is undisputed the CBA lists only "McGuire Steel Erection, Inc." as a

party and makes no mention of McGuire Steel Erectors, Ltd. Nevertheless, Plaintiffs argue that McGuire Steel Erectors, Ltd., should be added as a defendant based on the following statements made by Defendant McGuire during his deposition:

Q. Is McGuire Steel Erection Company the only company you're involved with?

A. I have McGuire Steel Erectors also.

Q. Can you explain the difference of the two? These contracts here are just from McGuire Steel Erection, Inc., correct?

A. That's correct.

Q. McGuire Steel Erection?

A. The best way of explanation is McGuire Steel Erectors was set up as an estate planning for my children, all of the actual work is done through McGuire Steel Erection.

Q. McGuire Steel Erectors doesn't do any work?

A. None to speak of, sublets everything to McGuire Steel Erection.

Q. Okay. Which company actually signs the contracts?

A. Could be either.

Q. Either/or. So they're both technically signatory to contracts with the Iron Workers?

A. That's correct.

McGuire Dep. at 5–6. Thus, according to Plaintiffs, even though the CBA clearly identifies only Defendant McGuire Steel Erection, Inc., as a party, Defendant McGuire's deposition testimony reveals that he may have intended both McGuire Steel Erectors Ltd. and Defendant McGuire Steel Erection, Inc., to be parties to the CBA. Defendant McGuire responds by claiming that he misunderstood the question. According to Defendant McGuire, he thought the questioner was asking whether McGuire Steel Erectors, Ltd. *could* be a signatory to labor contracts in general, not whether McGuire Steel Erectors, Ltd. was a signatory to the specific CBA at issue in this case. Furthermore, Defendants argue that the CBA speaks for itself and contains no reference to McGuire Steel Erectors, Ltd.

▪ The issue of whether an entity is a party to a collective bargaining agreement is a question of contract interpretation. *See Sheet Metal Workers Local 19 v. Keystone Heating & Air Conditioning,* 934 F.2d 35, 41 (3d Cir.1991). While federal substantive law governs the meaning of collective bargaining agreements, *see Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 456, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957), the meaning of a collective bargaining agreement may be determined by applying general rules of contract law as long as federal labor law is not in conflict. *See Int'l Union, UAW v. Yard–Man,* 716 F.2d 1476, 1479 (6th Cir.1983). Thus, "[u]nless ambiguous, a collective bargaining agreement is limited to the language contained in its four corners." *Trustees of B.A.C. Local 32 Ins. Fund v. Fantin Enterprises, Inc.,* 163 F.3d 965, 969 (6th Cir.1998) (citing *Baldwin–Montrose Chemical Co. v. Int'l Union, United Rubber, Cork, Linoleum and Plastic Workers of America, AFL–CIO,* 383 F.2d 796, 798 (6th Cir.1967)).

▪ Defendant McGuire clearly and unambiguously signed the CBA at issue in this case on behalf of "McGuire Steel Erection Inc.," as its president. *See* Plaintiffs' Ex. A. In addition, the agreement makes no reference to any company other than Defendant McGuire Steel Erection, Inc. The Court finds unpersuasive Plaintiffs' attempt to introduce Defendant McGuire's ambiguous deposition testimony to contradict the unambiguous terms of the CBA. *See Sheet Metal Workers Local 19,* 934 F.2d at 41 (upholding the district court's finding that the defendant was a

party to the CBA based upon the CBA's unambiguous language). Accordingly, adding McGuire Steel Erectors, Ltd., as a party-defendant would be legally futile and, therefore, Plaintiffs' motion for leave to file an amended complaint must be denied.

## B. Plaintiffs' Motion for Summary Judgment

Plaintiffs argue that under the undisputed language of both the Payment Agreement and the CBA, Defendant McGuire Steel is liable for unpaid installments under the Payment Agreement and unpaid fringe benefit contributions under the CBA. Plaintiffs also argue that there is no genuine issue of material fact regarding Defendant McGuire's fiduciary liability for the unpaid contributions required by the CBA or his guarantee liability for the unpaid installments under the Payment Agreement. The Court will address Plaintiffs' claims against Defendant McGuire Steel and Defendant McGuire separately.

### 1. Plaintiffs' Claims Against Defendant McGuire Steel

ERISA requires an employer to pay multi-employer trust fund contributions according to the terms and conditions of the collective bargaining agreements and benefit plans to which the employer is a signatory. See 29 U.S.C. § 1145. Trust funds, as fiduciaries, are authorized to enforce this requirement. See 29 U.S.C. § 1132(a)(3) (providing that a civil action may be brought by a fiduciary to enforce § 1145 or the terms of a plan). Plaintiffs maintain that Defendant McGuire Steel has failed to make the contributions required by the CBA and the monthly installments required by the Payment Agreement. Defendant McGuire Steel responds by arguing that (1) Plaintiffs have incorrectly calculated the amount of unpaid contributions, and (2) Plaintiffs breached the terms of the Payment Agree-

ment by filing construction liens, which impeded Defendant McGuire Steel's ability to make the payments required by the CBA and the Payment Agreement.

### a. Plaintiffs' Calculations of Unpaid Contributions

■ Defendant McGuire Steel maintains that Plaintiffs' calculations of unpaid contributions do not represent recent benefit payments that have been made through lien claims filed by Plaintiffs. In addition, Defendant McGuire Steel maintains that Plaintiffs have calculated benefits owed for at least two employees who are not covered by the CBA. It is well settled, however, that a dispute over damages or amounts owed does not preclude an award of summary judgment on the issue of liability. See FED. R. CIV. P. 56(c) ("A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."); see also Trustees of Michigan Laborers' Health Care Fund v. Gibbons, 209 F.3d 587, 595 (6th Cir.2000) (remanding to the district court with directions to enter partial summary judgment in favor of plaintiff benefit funds on the issue of liability only). Accordingly, the Court finds meritless Defendant McGuire Steel's argument that summary judgment is not appropriate because the parties dispute the amount of delinquent fringe benefits.

### b. Plaintiffs' Liens

■ Defendant McGuire Steel also claims, without any legal theory or case law in support, that Plaintiffs' lien and bond claims excuse its non-performance under both the Payment Agreement and the CBA. Defendant's argument appears to track the doctrine of prevention. Under this doctrine, "a contracting party whose unjustified action prevents the other

party from performing may not claim that the other party has not performed." *See* 17A AM. JUR.2d *Contracts* § 686. In addition, "the preventing party is not allowed to recover damages for the resulting non-performance or otherwise benefit from his or her own wrongful acts." 13 WILLISTON ON CONTRACTS § 39:3 (4th ed.); *Kiff Contractors, Inc. v. Beeman,* 10 Mich.App. 207, 210, 159 N.W.2d 144 (Mich.App.1968) (holding general contractor could not recover for breach of contract by subcontractor where general contractor prevented the subcontractor from performing the contract). Performance is not excused under the doctrine, however, if the alleged act of prevention was permitted under the express or implied terms of the contract. *See* 17A AM. JUR.2d *Contracts* § 686.

■ Plaintiffs filed their lien and bond claims after Defendant McGuire Steel failed to make a benefit contribution on April 26, 2003. *See* Plaintiffs' Ex. C, at 27 (provision of the CBA requiring monthly fringe benefit payments to be "received by the bank depository on the 26th day of the month following the month in which the hours are worked"). Defendant McGuire Steel argues that because April 26, 2003, fell on a Saturday, payment was not required until Monday, the next business day. It is undisputed that Defendant McGuire Steel deposited the benefit contributions on the following Monday. Therefore, according to Defendant McGuire Steel, Plaintiffs' construction liens are wrongful because the benefit contributions for April were paid in a timely manner.

■ Defendant's argument fails because the collective bargaining agreement unambiguously requires payment by the 26th day of the month and it contains no provision extending the date for payment in the event the date falls on a Saturday. Although statutes or court rules may extend certain dates that fall on legal holidays or weekends to the following business

day, that same extension cannot be read into an unambiguous private contract. *See e.g. Loyd v. Federal Kemper Life Assur. Co.,* 518 N.W.2d 374, 376 (Iowa 1994) (holding that statute's computation of time extending time period to the following Monday in the event the time period ended on a Sunday did not apply to an unambiguous insurance contract); *Gans v. Smull,* 111 Cal.App.4th 985, 4 Cal.Rptr.3d 353, 357 (2003) (holding that civil procedure rule extending period to perform any lawfully required act past holidays, including Saturday, to the next non-holiday did not apply to a commercial lease). Furthermore, contrary to Defendant McGuire Steel's apparent assumption, Saturday is considered a secular or business day under Michigan law. *See* 13 MICH. CIV. JUR. *Holidays* § 1 (citing MICH. COMP. LAWS § 435.101). Therefore, the Court finds unpersuasive Defendant McGuire Steel's contention that Plaintiffs' lien filings were premature.

Moreover, Plaintiffs' lien and bond claims were impliedly authorized under the terms of the Payment Agreement. As noted above, the Payment Agreement reserves Plaintiffs' right to "collect delinquent fringe benefit contributions pursuant to state ... law." Plaintiffs' Ex. C, at ¶ 4. Thus, by signing the Payment Agreement, Defendant McGuire Steel agreed to allow Plaintiff to collect delinquent fringe benefit contributions under state law.

Accordingly, the Court finds that Plaintiffs did not wrongfully prevent Defendant McGuire Steel's performance under either the Payment Agreement or the CBA. Plaintiffs are therefore entitled to summary judgment on the issue of Defendant McGuire Steel's liability under both the Payment Agreement and the CBA. Although the precise amount of delinquent contributions is disputed, the Court will

resolve this dispute upon subsequent submission of papers by the parties.

### 2. Plaintiffs' Claims Against Defendant McGuire

Plaintiffs also maintain that they are entitled to recover the delinquent fringe benefit contributions owed under the CBA and the delinquent payment installments owed under the Payment Agreement from Defendant McGuire personally, as president of Defendant McGuire Steel. Plaintiffs assert that Defendant McGuire personally guaranteed Defendant McGuire Steel's obligations under the Payment Agreement, thus, he is liable for Defendant McGuire Steel's failure satisfy those obligations. In addition, Plaintiffs argue that Defendant McGuire is personally liable for any remaining delinquent fringe benefit contributions required by the CBA, whether or not those contributions are included in the Payment Agreement, because he used those unpaid contributions to finance his business. Plaintiffs argue that delinquent fringe benefit contributions become plan assets the moment they become due and owing. Thus, according to Plaintiffs, Defendant McGuire's control and use of these contributions after the due date amounts to a misappropriation of plan assets by a fiduciary.

Defendant McGuire responds by arguing that although the had discretionary authority with respect to the management and disposition of benefit contributions, that control was lost when Plaintiffs filed lien and bond claims resulting in the direct payment of funds from Defendant McGuire Steel's customers to Plaintiffs. Defendant McGuire also argues that although he personally guaranteed Defendant McGuire Steel's obligations under the Payment Agreement, Plaintiffs' lien and bond claims wrongfully prevented Defendant McGuire Steel from making the required payments.

### a. Defendant McGuire's Liability Under the Payment Agreement

As noted above, the Payment Agreement provides that "Dan McGuire, personally guarantees this debt and assumes personal liability for its repayment." Plaintiffs' Ex. C at ¶ 5. Defendant McGuire's sole argument against Plaintiffs' attempt to hold him liable under the guarantee provision is that through their lien and bond claims, Plaintiffs wrongfully prevented Defendant McGuire Steel from making the required payments under the Payment Agreement. As set forth in Part IV. B. 1, however, the Court finds no evidence to support the claim that Plaintiffs wrongfully prevented performance. Accordingly, Plaintiffs are entitled to summary judgment with respect to Defendant McGuire's liability as a guarantor under the Payment Agreement.

### b. Defendant McGuire's Fiduciary Liability

Once an employer adopts an employee benefit plan, ERISA enforces strict fiduciary standards of care in the administration of the plan and promotion of the best interests of participants and beneficiaries. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Musto v. American General Corp.,* 861 F.2d 897, 911 (6th Cir.1988). "In every case charging breach of ERISA fiduciary duty ... the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich,* 530 U.S. 211, 226, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000). ERISA provides that a person is a fiduciary with respect to an employee benefit plan to the extent "he

**804**

exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ...." 29 U.S.C. § 1002(21)(A); *Best v. Cyrus,* 310 F.3d 932, 934–35 (6th Cir.2002). Thus, the definition of an ERISA fiduciary not only includes persons specifically named as fiduciaries by the plan, but also any person who exercises discretionary control or authority over a plan's management, administration, or assets. *See Mich. Affiliated Healthcare Sys., Inc. v. CC Sys. Corp.,* 139 F.3d 546, 549 (6th Cir.1998). Therefore, to determine whether Defendant McGuire Steel acted as an ERISA fiduciary, the Court must determine: (1) whether delinquent benefit contributions are plan assets; and (2) whether Defendant McGuire exercised discretionary control or authority over such assets.

### i. The Unpaid Contributions Became Plan Assets When the Contributions Became Due

▮ The Sixth Circuit has yet to consider when unpaid benefit contributions become plan assets. Courts in the Third Circuit hold that benefit contributions become plan assets at the moment they are due, so long as the parties have agreed that contributions become plan assets when due. *See e.g. Galgay v. Gangloff,* 677 F.Supp. 295 (M.D.Pa.1987), *aff'd,* 932 F.2d 959 (3d Cir.1991) (delinquent contributions held to be plan assets pursuant to the terms of a wage agreement); *Trustees of the National Elevator Indust. Pension, Health Benefit & Educational Funds v. Lutyk,* 140 F.Supp.2d 447, 455 (E.D.Pa. 2001) (finding no language in the benefit plan sufficient to make unpaid employer contributions trust assets). Other courts,

however, hold that unpaid benefit contributions become plan assets when the contributions become due, regardless of the language of the benefit plan. *See e.g., Board of Trustees of the Airconditioning & Refrigeration Indust. Health & Welfare Trust Fund v. J.R.D. Mechanical Services, Inc.,* 99 F.Supp.2d. 1115, 1120 n. 4 (C.D.Cal.1999) (finding that both employer contributions and employee wage deductions are plan assets, regardless of the language of benefit plan documents or whether the funds are ever conveyed to the plan); *United States v. Grizzle,* 933 F.2d 943, 947 (11th Cir.1991) (finding liability under an analogous criminal statute where the employer exercised control over employee contributions deducted from employee wages).

Under either of the above approaches, the unpaid contributions in this case became vested plan assets when they became due. According to the terms of an "Amendment and Restatement of Iron Workers' Local No. 25 Pension Fund Declaration and Agreement of Trust," (hereinafter "Trust Agreement"), entered into between the parties, employer contributions "become vested Plan assets at the time they become due and owing to the Fund." Plaintiffs' Ex. F, at § 2.4. Furthermore, under the Trust Agreement, "[a]n Employer shall have no right, title or interest in the Contributions owing to or made to the fund." *Id.* Accordingly, the unpaid benefit contributions in this case became plan assets when the contributions became due.[4] *See Galgay,* 677 F.Supp. at 301.

### ii. Defendant McGuire Acted in a Fiduciary Capacity With Respect to Plan Assets

▮ A person is a fiduciary to the extent that person exercises any authority or

---

4. It should be noted that Defendants have not challenged Plaintiffs' assertion that under the Trust Agreement unpaid benefit contributions become vested plan assets when the contributions become due.

control respecting management or disposition of plan assets. *See* 29 U.S.C. § 1002(21)(A). Because the Court finds that under the Trust Agreement unpaid employee withholdings and employer contributions are plan assets when they become due, Defendant McGuire acted as an ERISA fiduciary to the extent he exercised any authority or discretion over the disposition of those contributions and withholdings after they became due. *See PMTA–ILA Containerization Fund v. Rose,* No. 94–5635, 1995 WL 461269, *5 (E.D.Pa. Aug. 2, 1995) ("Courts have consistently held that employers who exercise discretionary control over funds that are designated for deposit into an ERISA fund qualify as fiduciaries."); *NYSA–ILA Medical & Clinical Services Fund v. Catucci,* 60 F.Supp.2d 194, 201 (S.D.N.Y.1999) ("An agreement that unpaid debts to an ERISA fund become fund assets means that when a corporation is delinquent in its contributions, the fund has sufficient priority on the corporation's available resources that individuals controlling corporate resources are controlling fund assets."); *see also Parker v. Bain,* 68 F.3d 1131, 1140 (9th Cir.1995) (finding company Vice President and majority owner to be a fiduciary because he ordered employees to withdraw plan assets to deposit into the corporation's general account); *LoPresti v. Terwilliger,* 126 F.3d 34, 40 (2d Cir.1997) (holding that individual who paid company creditors instead of forwarding assets to the trust funds was a fiduciary); *Connors v. Paybra Mining Co.,* 807 F.Supp. 1242, 1246 (S.D.W.Va.1992) (holding that company officers and directors were fiduciaries because they made "personal, conscious choices" to use withheld employee contributions to pay company expenses). Plaintiffs maintain that as president of Defendant McGuire Steel, Defendant McGuire clearly had discretionary authority over the use of the delinquent contributions.

It is undisputed that Defendant McGuire acted as Defendant McGuire Steel's president. Furthermore, Defendant McGuire has also admitted that he is "responsible for running the day-to-day operations of the company and ... for all its decisions pertaining to the payment of contributions to the Funds, including decisions whether to pay contributions." Compl. at ¶ 3; Answer, at ¶ 3. Thus, Defendant McGuire does not dispute that he exercises authority and control over the payment of contributions. Instead, he argues that he lost that authority and control when Plaintiffs filed lien and bond claims that prevented Defendant McGuire Steel from being paid by its customers.

The Court finds Defendant McGuire's argument unpersuasive. Plaintiffs are seeking to recover in excess of $90,000.00 in unpaid contributions that the lien and bond claims obviously failed to recover. Although the lien and bond claims prevented Defendant McGuire from exercising any discretion with respect to the funds recovered by those claims, they did not prevent him from exercising discretion with respect to thousands of dollars that remain unpaid. As one court has noted:

> [Fiduciary violations] may seem difficult to avoid when the corporation is in debt to the Fund because virtually any bills the corporation pays may be deemed uses of Fund assets. That is what the corporation and its controlling persons bargained for, however, when they agreed that unpaid contributions be deemed Fund assets. A ruling otherwise would improperly rewrite a collective bargaining agreement in a way that deprives one party, the Fund, of a useful debt collection procedure that the other party—the employer and its privies, agents, and controlling persons—freely agreed upon in a bargaining process that balanced both sides' benefits and detriments.

*Catucci,* 60 F.Supp.2d 194, 203 (S.D.N.Y. 1999). Therefore, given Defendant McGuire's admission that he was responsible for the day-to-day operation of Defendant McGuire Steel, including the decision of whether or not to pay ERISA benefit contributions, no reasonable jury could find that he did not act in a fiduciary capacity. *See Professional Helicopter Pilots Assoc. v. Denison,* 804 F.Supp. 1447, 1452 (M.D.Ala.1992) (awarding plaintiff funds summary judgment as to individual corporate officers' breach of fiduciary duty); *Connors v. Paybra Mining Co.,* 807 F.Supp. 1242, 1246 (S.D.W.Va.1992) (awarding plaintiffs summary judgment on breach of fiduciary duty based on individual corporate officers' discretion and control over plan assets); *PMTA–ILA Containerization Fund v. Rose,* No. 94–5635, 1995 WL 461269, *5 (E.D.Pa. Aug. 2, 1995) (same); *Pension Benefit Guaranty Corp. v. Solmsen,* 671 F.Supp. 938 (E.D.N.Y. 1987) (same, and noting that "[m]ost significantly, defendant was responsible for authorizing and making payments to the Plan."); *Laborers' Combined Funds of Western Pennsylvania v. Parkins,* No. 01–CV–79, 2002 WL 31435287 (W.D.Pa. June 5, 2002) (same).

### iii. Defendant McGuire Breached His Fiduciary Duty

██ An ERISA fiduciary must "discharge his duties with respect to a plan solely in the interests of the participants and beneficiaries ...." 29 U.S.C. § 1104(a)(1). The fiduciary must ensure that "assets of the plan never inure to the benefit of the employer." 29 U.S.C. § 1103(c)(1). A fiduciary violates this duty if he or she uses plan assets to satisfy other business obligations. *See Connors,* 807 F.Supp. at 1246; *Catucci,* 60 F.Supp.2d at 203. Furthermore, "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon

fiduciaries" is personally liable "to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary ...." 29 U.S.C. § 1109(a).

██ Defendant McGuire has admitted to running the day-to-day operations of Defendant McGuire Steel, including being responsible for decisions to pay contributions. In addition, he has not challenged Plaintiffs' assertion that Defendant McGuire Steel continued to operate despite monthly shortfalls in benefit contributions, which leads to the inescapable and unrebutted conclusion that the company was being financed with plan assets. *See e.g., Denison,* 804 F.Supp. at 1452 ("Because [the employer] did not have these assets available for deposit to the fund ... there is no other choice but to conclude that the trust fund assets were diverted for purposes other than for the exclusive benefit of the pension plan participants and beneficiaries"); *Connors,* 807 F.Supp. at 1246 ("Fund assets, in the form of due and owing contributions, were either diverted for other purposes or simply not paid as a result of [defendants'] personal, discretionary control and management .... Because [defendants] failed to act 'solely in the interest of the participants and beneficiaries' of the Fund ... they breached their fiduciary duty."). Accordingly, Defendant McGuire has failed to raise a genuine issue of material fact and Plaintiffs are entitled to summary judgment with respect to Defendant McGuire's breach of fiduciary duty.

### C. Conclusion

As discussed above, there are no genuine issues of material fact with respect to (1) Defendant McGuire Steel's liability for delinquent payments under both the terms

of the CBA and the Payment Agreement, (2) Defendant McGuire's personal fiduciary liability for delinquent payments under CBA, or (3) Defendant McGuire's liability as guarantor of Defendant McGuire Steel's obligations under the Payment Agreement. The amount of delinquent contributions, however, is disputed by the parties. It appears that Plaintiffs may have received additional payments through lien or bond claims during the pendency of this action. In addition, Plaintiffs concede that they have calculated contributions for at least two employees who are not covered by the CBA. Therefore, the Court will grant Plaintiffs partial summary judgment with respect to liability only.

The Court will resolve the dispute over the amounts owed upon submission of arguments by the parties. Each party must support through documentation its assertion of amounts owed under both the CBA and the Payment Agreement, including any liquidated damages, interest, and attorney fees. Any request for attorney fees must be supported by "lodestar" information. *See Building Service Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway, Northeast Ohio Harness*, 46 F.3d 1392, 1401 (6th Cir.1995) (holding that courts must examine the reasonableness of attorney fee awards under ERISA using the lodestar method). If no genuine issue of material fact exists as to the amounts owed under the Payment Agreement and CBA, the Court will grant summary judgment accordingly.

## V. CONCLUSION

Therefore, for the reasons set forth above, Plaintiffs' Motion for Summary Judgment and to Amend Complaint [dkt. # 24] is hereby GRANTED IN PART. Plaintiffs are granted partial summary judgment on the issue of Defendants' liability under the CBA and Payment Agreement. Plaintiffs' motion is DENIED in all other respects. Defendants' request for summary judgment in his Response Brief [dkt. # 25] is hereby DENIED. Within 30 days of service of this Order, the parties must submit cross-motions for entry of judgment detailing each party's assertion of amounts owed under both the CBA and the Payment Agreement, including liquidated damages, interest, and attorney fees. Response and reply briefs shall be filed in accordance with E.D. MICH. L.R. 7.1(b)—(d). In addition, because Plaintiffs have yet to file an Answer to Defendants' Counter–Complaint, Defendants may obtain a clerk's entry of default within 30 days in the absence of an Answer by Plaintiffs, or face dismissal with prejudice for failure to prosecute.

IT IS SO ORDERED.