*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0251p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

In re: CHARLES S. BUCCI,

*Debtor.*

---

BOARD OF TRUSTEES OF THE OHIO CARPENTERS'
PENSION FUND ON BEHALF OF THE OHIO
CARPENTERS' PENSION FUND, et al.,

*Appellants,*

*v.*

CHARLES S. BUCCI,

*Appellee.*

No. 06-4164

---

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 06-00842—Patricia A. Gaughan, District Judge.

Argued: June 7, 2007

Decided and Filed: July 3, 2007

Before: MARTIN and SUTTON, Circuit Judges; GRAHAM, District Judge.[*]

---

## COUNSEL

**ARGUED:** Richard L. Stoper, Jr., ROTATORI, BENDER, GRAGEL, STOPER & ALEXANDER CO., Cleveland, Ohio, for Appellants. Keith L. Borders, RAUSER & ASSOCIATES LEGAL CLINIC CO., Cleveland, Ohio, for Appellee. **ON BRIEF:** Richard L. Stoper, Jr., ROTATORI, BENDER, GRAGEL, STOPER & ALEXANDER CO., Cleveland, Ohio, for Appellants. Keith L. Borders, RAUSER & ASSOCIATES LEGAL CLINIC CO., Cleveland, Ohio, for Appellee.

---

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

1

---

**OPINION**

---

GRAHAM, District Judge.  This action presents the question of whether the United States Bankruptcy Code excludes from discharge a debt that an employer owes for failing to contribute to employee benefit funds.  Debtor Charles S. Bucci signed a collective bargaining agreement in 2003 requiring his company, Floors by Bucci, Inc., to make monthly contributions to pension and fringe benefit funds.  Bucci admits that he failed to contribute to the funds for over a year.  In 2005, he filed a Chapter 7 bankruptcy petition.

Appellants, who represent the various funds (the "Funds"), filed an adversary proceeding in the bankruptcy court, seeking a declaration that Bucci's debt could not be discharged.  They argued that his failure to contribute to the funds was a "defalcation while acting in a fiduciary capacity" under 11 U.S.C. § 523(a)(4).  The bankruptcy court held that § 523(a)(4) did not apply because there was no evidence demonstrating Bucci acted as a fiduciary of the monies owed to the funds.  On appeal, the district court affirmed and rejected the Funds' contention that Bucci's status as a fiduciary under the Employee Retirement Income Security Act of 1974 (ERISA) also made him a fiduciary for purposes of § 523(a)(4)'s defalcation provision.

Because the requirements for a defalcation under § 523(a)(4) are not met in this case, we **AFFIRM**.

**I.**

Bucci is the president and sole shareholder of Floors by Bucci, Inc.  In February 2003, he signed the Northeast Ohio Carpenters' Collective Bargaining Agreement.  Article XXV of the CBA required Bucci's company to make monthly contributions to certain pension, hospitalization, and annuity funds.  The amount of the contribution to each fund was set by a rate specified in Appendix D to the CBA.  In addition, the CBA required Bucci's company to withhold union dues and vacation benefits from employees' wages.  Under the CBA, wage statements provided to employees had to indicate the amount of employer contributions and wage withholdings being made for each pay period.

In January 2005, Bucci filed a Chapter 7 bankruptcy petition.  He scheduled a $99,000 debt to the benefit funds for unpaid employer contributions and withholdings.

On April 11, 2005, the boards of trustees for the Funds filed an adversary proceeding against Bucci.  The complaint alleges that Bucci should be treated as the alter ego of Floors by Bucci because he acted as the only officer and director of the company, made all corporate decisions, owned 100% of the company's stock, and ignored corporate separateness from his personal financial affairs.  The complaint further alleges that from March 2003 through May 2004, Bucci failed to make the employer contributions required by the CBA and failed to remit union dues and vacation benefits that he had withheld from his employees' wages.  According to the complaint, Bucci owed to the Funds $61,300 in employer contributions and $24,500 in related delinquency assessments, and he owed $9600 in wage withholdings and $3900 in related delinquency assessments. The complaint seeks a declaration that Bucci's debts for unpaid contributions and withholdings are not dischargeable in bankruptcy because they qualify as debts from defalcation and from embezzlement under 11 U.S.C. § 523(a)(4).

Bucci did not dispute before the bankruptcy court that he was an alter ego of Floors by Bucci or that he had failed to pay the contributions and withholdings.  The parties filed cross-motions for summary judgment on the claims of defalcation and embezzlement.  The bankruptcy court found

that the unpaid employer contributions were not a debt from defalcation because Bucci did not act as a fiduciary of the contributions. Citing *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386 (6th Cir. 2005), the court held that a defalcation is limited to situations where the parties to a creditor-debtor relationship intend for the debtor to act as a trustee of the monies owed. The bankruptcy court concluded that even though Bucci had a contractual obligation to pay the contributions, there was no evidence that Bucci acted as a trustee. The court further held that the embezzlement provision of § 523(a)(4) did not apply because Bucci's mere failure to pay a contractual obligation did not constitute embezzlement. Thus, the court concluded that the debt for unpaid employer contributions was dischargeable.

In contrast, the bankruptcy court concluded that the debt for unpaid wage withholdings was excluded from discharge. The court found that the CBA created a trust, with the withheld wages as the trust res and Bucci as the trustee. In the bankruptcy court's view, the wages Bucci withheld from employees' paychecks belonged to the employees as earned compensation under the CBA. Bucci was entrusted with those wages and was required to turn them over to the union and vacation benefit fund. The bankruptcy court therefore found that Bucci was a fiduciary of the withheld wages and that his failure to remit the entrusted monies was a defalcation.

Only the bankruptcy court's ruling regarding employer contributions was appealed to the district court. The Funds argued that the bankruptcy court should have relied on ERISA law to find that Bucci was a fiduciary of the employer contributions. The district court rejected this argument and held that under *Blaszak*, the defalcation provision does not apply unless the debtor holds the monies in trust. The court ruled that being an fiduciary under ERISA's broad definition of that term is not enough. The district court found no evidence that Bucci acted as a fiduciary of the contributions and affirmed the bankruptcy court's decision.

The Funds now appeal the decision of the district court. For the reasons stated below, we affirm.

## II.

On appeal of a district court's initial appellate review of a bankruptcy court's decision, "this court independently reviews the bankruptcy court's findings of fact for clear error and its conclusions of law de novo*." R.E. America, Inc. v. Garver (In re Garver)*, 116 F.3d 176, 178 (6th Cir. 1997). Debtor Charles S. Bucci concedes that he should be treated as his company's alter ego and that he failed to make the monthly employer contributions the CBA required him to make. The primary issue on appeal is  whether Bucci's debt from failing to remit the employer contributions is excluded from discharge as a defalcation while acting in a fiduciary capacity. Also at issue is whether Bucci's debt is nondischargeable as an embezzlement.

The Bankruptcy Code "does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity."  11 U.S.C. § 523(a)(4).  A "defalcation" encompasses not only embezzlement and misappropriation by a fiduciary, but also the "failure to properly account for such funds." *Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency)*, 760 F.2d 121, 125 (6th Cir. 1985) (internal quotations omitted).  A debt is nondischargeable as a defalcation when the preponderance of the evidence establishes: "(1) a pre-existing fiduciary relationship; (2) breach of that fiduciary relationship; and (3) a resulting loss." *In re Blaszak*, 397 F.3d at 390.

The Sixth Circuit "construes the term 'fiduciary capacity' found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances." *In re Blaszak*, 397 F.3d at 391. In *Carlisle Cashway, Inc. v. Johnson (In re Johnson)*, 691 F.2d 249, 251-52 (6th Cir. 1982), and *In re Interstate Agency*, 760 F.2d at 125, we limited the application of the defalcation provision

to express or technical trusts and refused to extend it to constructive or implied trusts imposed by operation of law as a matter of equity. The decisions in those cases relied on the Supreme Court's holding in *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 333, 55 S.Ct. 151, 153 (1934), that the defalcation provision applies only to express or technical trusts. Again in *In re Garver*, we adopted a narrow definition of the defalcation provision and held that it does not apply to someone who merely fails to meet an obligation under a common law fiduciary relationship. *In re Garver*, 116 F.3d at 179 ("The attorney-client relationship, without more, is insufficient to establish the necessary fiduciary relationship for defalcation under § 523(a)(4)."). Accordingly, the defalcation provision applies to "only those situations involving an express or technical trust relationship arising from placement of a specific res in the hands of the debtor." *In re Garver*, 116 F.3d at 180.

To establish the existence of an express or technical trust, a creditor must demonstrate: "(1) an intent to create a trust; (2) a trustee; (3) a trust res; and (4) a definite beneficiary." *In re Blaszak*, 397 F.3d at 391-92 (citing *Graffice v. Grim (In re Grim)*, 293 B.R. 156, 166 (Bankr. N.D. Ohio 2003)). Though the court in *In re Blaszak* spoke of "an intent to create a trust," it is clear in this circuit that a statute may create a trust for purposes of § 523(a)(4) if that statute defines the trust res, imposes duties on the trustee, and those duties exist prior to any act of wrongdoing. The court held in *In re Johnson* that Michigan's Building Contract Fund Act created a trust relationship sufficient to satisfy the express or technical trust requirement. The Act defined the trust res as all payments made to a contractor for the benefit of laborers, subcontractors, or materialmen. *In re Johnson*, 691 F.2d at 252. The Act defined the contractor as the trustee and imposed on the contractor a duty to "use the money in the building contract fund to first pay laborers, subcontractors and materialmen on the particular project for which the funds were deposited before he uses the funds for any other purpose." *Id*. The fiduciary relationship established by the Act arose when a payment was made to a contractor, not whenever a contractor misappropriated the funds; thus, the Act imposed duties on the trustee prior to any act of wrongdoing. *Id*. ("[S]tatutes which impose a trust ex-maleficio are not within the scope of [the defalcation provision] since such trusts only arise upon an act of misappropriation."). The court therefore concluded that the Act imposed a trust relationship that satisfied the Bankruptcy Code's defalcation provision. *Id*. *See also In re Interstate Agency*, 760 F.2d at 124-25 (finding that an express trust was created by a state statute requiring insurance agents to hold premium payments received from an insured in trust and turn them over to the insurance company principal).

The Funds argue that an express trust was created here under ERISA. They contend that the employer contributions were plan assets under ERISA and constituted the trust res. They further argue that Bucci met the definition of an ERISA trustee because he exercised control over the assets by choosing to not pay the contributions. *See Moore v. LaFayette Life Ins. Co.,* 458 F.3d 416, 438 (6th Cir. 2006) (definition of a fiduciary under ERISA includes person "who exercises discretionary control or authority over a plan's management, administration, or assets."). According to the Funds, ERISA imposed on Bucci certain management duties requiring him to hold the plan assets for the benefit of his employees.

In support of the proposition that being an ERISA fiduciary is sufficient to satisfy the fiduciary capacity requirement of § 523(a)(4), the Funds cite *Blyler v. Hemmeter (In re Hemmeter)*, 242 F.3d 1186 (9th Cir. 2001). There, the Ninth Circuit held that an ERISA fiduciary is also a fiduciary under § 523(a)(4). The court reasoned that "ERISA satisfies the traditional requirements for a statutory fiduciary to qualify as a fiduciary under § 523(a)(4)." *In re Hemmeter*, 242 F.3d at 1190. The court found that ERISA defined the trust res and identified the fiduciary's duties. Several other courts have also held that being a fiduciary under ERISA law satisfies the fiduciary capacity element of § 523(a)(4). *See Chao v. Duncan (In re Duncan)*, 331 B.R. 70, 82 (Bankr. E.D.N.Y. 2005); *Weaver v. Weston (In re Weston)*, 307 B.R. 340, 343 (Bankr. D.N.H. 2004); *Morgan v. Musgrove (In re Musgrove)*, 187 B.R. 808, 814 (Bankr. N.D. Ga. 1995).

Other courts have disagreed and held that an being an ERISA fiduciary is not itself sufficient to satisfy the fiduciary capacity element of § 523(a)(4). In *Hunter v. Philpott*, 373 F.3d 873 (8th Cir. 2004), the debtor, Philpott, co-owned a corporation that was required under a collective bargaining agreement to make employer contributions to certain employee benefit funds. The corporation failed to make those contributions, and the Funds sought a determination that Philpott's obligations to the Funds were nondischargeable as a defalcation under § 523(a)(4). The Eighth Circuit rejected the holding in *In re Hemmeter*:

> We are not satisfied that the simple determination that an individual is an ERISA fiduciary is enough to satisfy the requirements of § 523(a)(4). Instead, we believe that the prior holdings of our court and the United States Supreme Court require that we look specifically at the property that is alleged to have been defalcated to determine whether Philpott was legally obligated to hold that specific property for the benefit of the Funds.

*Hunter*, 373 F.3d at 875 (citing *Davis*, 293 U.S. 328, 55 S.Ct. 151, and *Barclay's American/Business Credit, Inc. v. Long (In re Long)*, 774 F.2d 875, 878 (8th Cir. 1985)). The court noted that "[s]imply possessing property to which an ERISA plan asserts a claim does not place one in a fiduciary relationship with the plan." *Id*. at 876. An alleged trustee must have fiduciary duties that preexist "'the incident creating the contested debt and apart from it. It is not enough that the trust relationship spring from the act from which the debt arose.'" *Id*. at 877 (quoting *Devaney v. Dloogoff (In re Dloogoff)*, 600 F.2d 166, 168 (8th Cir. 1979)). Section 523(a)(4) was not satisfied because Philpott's alleged duties to the Funds arose out of the wrongful act – his failure to pay – that created the debt. *Id*. The "the substance of the relationship" was therefore "contractual, not fiduciary, in nature." *Id*. *See also Navarre v. Luna (In re Luna)*, 406 F.3d 1192, 1205 (10th Cir. 2005) ("[A] delinquent employer-contributor [to a collectively-bargained ERISA plan] is merely a debtor, not a fiduciary.").

Other courts have likewise held that ERISA fiduciaries do not necessarily act in a fiduciary capacity for purposes of § 523(a)(4). *See Mo-Kan Iron Workers Pension Fund v. Engleman (In re Engleman)*, 271 B.R. 366, 370 (Bankr. W.D. Mo. 2001) (holding that § 523(a)(4) requires more than an employer's contractual duty to contribute to benefit funds; employer had no control over the contributions once they were paid to the funds); *Int'l Bhd. of Elec. Workers, Local Union No. 602 v. Bryant (In re Bryant)*, 73 B.R. 956, 958-59 (Bankr. N.D.Tex. 1987) ("The fact that [ERISA] makes an employer a 'fiduciary' under an Employee Welfare Benefit Plan, does not raise the employer's status to a fiduciary for bankruptcy discharge purposes."); *Schrimsher v. Nielsen (In re Nielsen)*, 53 B.R. 289, 291 (Bankr. N.D. Ala. 1985).

As noted above, the Sixth Circuit has repeatedly construed "the term 'fiduciary capacity' found in the defalcation provision of § 523(a)(4) more narrowly than the term is used in other circumstances." *In re Blaszak*, 397 F.3d at 391. This definition does not match the definition of an ERISA fiduciary. While § 523(a)(4) does not extend to someone who fails to meet an obligation under a common law fiduciary relationship, *In re Garver*, 116 F.3d at 179, the definition of a fiduciary under ERISA is "broader than the common-law definition, and does not turn on formal designations such as who is the trustee." *Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999); *accord Moore*, 458 F.3d at 438; *Custer v. Pan American Life Ins. Co.*, 12 F.3d 410, 418 n.3 (4th Cir. 1993) (stating that ERISA definition of fiduciary is "broader than the common law concept of a trustee"). The court's narrow construction of the defalcation provision is consistent with the general rule that exceptions to discharge in § 523(a) must be narrowly construed. *See Myers v. IRS (In re Myers)*, 196 F.3d 622, 624 (6th Cir. 1999); *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1452 (6th Cir. 1994). It is also consistent with the Supreme Court's holding in *Davis* that "[i]t is not enough that, by the very act of wrongdoing out of which the contested debt arose, the bankrupt has become chargeable as a trustee ex maleficio. He must have

been a trustee before the wrong and without reference thereto." *Davis*, 293 U.S. at 333, 55 S.Ct. at 154. *See also Quaif v. Johnson*, 4 F.3d 950, 953 (11th Cir. 1993) (citing *Davis* in stating that the "Supreme Court has consistently held that the term 'fiduciary' is not to be construed expansively" for purposes of § 523(a)(4)).

This court agrees with *Hunter* that a court should examine the substance of the alleged fiduciary relationship to determine if the requirements for a defalcation are satisfied. *See Cash America Fin. Serv., Inc. v. Fox (In re Fox)*, __ B.R. __, 2007 WL 1693063, at *7 (6th Cir. B.A.P. 2007) ("'It is the substance of a transaction, rather than the labels assigned by the parties, which determines whether there is a fiduciary relationship for bankruptcy purposes.'") (quoting *In re Long*, 774 F.2d at 878-79). We made clear in *In re Johnson* that "the requisite trust relationship must exist prior to the act creating the debt and without reference to it." *In re Johnson*, 691 F.2d at 252 (citing *Davis*, 293 U.S. at 333-34, 55 S.Ct. at 153-54). The court in both *In re Johnson* and *In re Interstate Agency* examined the state statutes at issue and found that they established the requisite trust relationship because they imposed trusts existing separate from the act of wrongdoing and independent of any contractual obligation to make a payment.

Here, the parties entered into three identical trust agreements pursuant to the CBA. Each trust agreement created a "Trust Fund" whose assets included "all funds received or due to be received by the Trustees in the form of Employer Contributions (including delinquent Employer Contributions) . . . ." Trust Agr., Art. I, Sec. 16 (J.A. 193). Neither the bankruptcy court nor the district court below addressed the issue of whether the employer contributions qualified as ERISA plan assets. Traditionally, the "proper rule, developed by caselaw, is that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise." *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1013 (11th Cir. 2003) (footnotes omitted). In the face of this rule, parties, like the ones here, have crafted language expressly stating that contributions due to be received are assets belonging to the fund. Courts examining such language have found that unpaid contributions are plan assets. *See, e.g., Trustees of Conn. Pipe Trades Local 777 Health Fund v. Nettleton Mech. Contractors, Inc.*, 478 F.Supp.2d 279, 283 (D. Conn. 2007); *Trustees of the S. Cal. Pipe Trades Health and Welfare Trust Fund v. Temecula Mech., Inc.*, 438 F.Supp.2d 1156, 1163 (C.D. Ca. 2006). For the sake of argument, the court will assume that the unpaid employer contributions here qualified as ERISA plan assets.

The Funds do not argue that the trust agreements made Bucci a trustee. Indeed, in the cross-motion for summary judgment they filed in bankruptcy court, the Funds attached only the "Definitions" section of the trust agreements; they did not include the section of the agreements that designated the trustee. The Funds instead argue that Bucci was a fiduciary under ERISA because he exercised control over the plan assets. *See* 29 U.S.C. § 1002(21)(A)(i); *Moore,* 458 F.3d at 438 (definition of an ERISA fiduciary includes a person "who exercises discretionary control or authority" over a plan's assets). The Funds argue that Bucci exercised control over the plan assets when he chose not to pay the contributions, and they rely on *U.S. v. Panepinto*, 818 F.Supp. 48, 52 (E.D.N.Y. 1993), where the court found that "[o]nce the defendants knowingly failed to make required contributions to the Funds, they exercised control respecting the disposition of the assets of an employee welfare benefit plan." *See also LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir. 1997) (holding that an employer became an ERISA fiduciary when he opted not to pay employer contributions to the Funds).

The Funds' argument illustrates the problem with treating a debtor's status as an ERISA fiduciary as alone being sufficient to create an express or technical trust for purposes of § 523(a)(4). The act that created the debt – Bucci's breach of his contractual obligation to pay the employer contributions – is also the exercise of control that the Funds allege made Bucci an ERISA fiduciary.

But for a trust relationship to satisfy § 523(a)(4), the alleged fiduciary must have duties that preexist the act creating the debt. *Davis*, 293 U.S. at 333, 55 S.Ct. at 154; *In re Johnson*, 691 F.2d at 252.

The Funds' reliance on *Iron Workers' Local No. 25 Pension Fund v. McGuire Steel Erection, Inc.*, 352 F.Supp.2d 794 (E.D. Mich. 2004) does not help their argument. In *Iron Workers*, the court held that unpaid employer contributions became ERISA plan assets when the contributions became due. *Iron Workers*, 352 F.Supp.2d at 804. The court further held that the employer "acted as an ERISA fiduciary to the extent he exercised any authority or discretion over the disposition of those contributions and withholdings after they became due." *Id*. at 805. The holding in *Iron Workers* serves to underscore the problem: if an employer failing to pay contributions becomes an ERISA fiduciary only after the contributions are due, then the trust relationship springs from the act from which the debt arose. Such a trust relationship does not create an express or technical trust for purposes of § 523(a)(4).

In their reply brief, the Funds fall back on the argument that Bucci's possession of trust assets, as opposed to his failure to pay them, is what made him an ERISA fiduciary. However, "ERISA's statutory definition will not extend fiduciary status to every person who exercises mere possession, or custody over the plans' assets." *Briscoe v. Fine*, 444 F.3d 478, 494 (6th Cir. 2006) (internal quotations omitted); *see also Hunter*, 373 F.3d at 875. An exercise of control is necessary, but the only exercise of control alleged by the Funds is the same act that created the debt.

The key point for bankruptcy purposes, however, is that Bucci had only a *contractual* obligation to pay the employer contributions. This is not enough, for "the debtor must hold funds in trust for a third party to satisfy the fiduciary relationship element of the defalcation provision of § 523(a)(4)." *In re Garver*, 116 F.3d at 179. As the bankruptcy and district courts below correctly found, there is no evidence on the record establishing that Bucci was the trustee of the employer contributions. Therefore, the defalcation provision of § 523(a)(4) does not apply.

The court further finds that the embezzlement provision of § 523(a)(4) does not apply. "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." *Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1173 (6th Cir. 1996). The Funds argue that Bucci was entrusted with the employer contributions and that he appropriated them for another use by failing to pay them. The bankruptcy court found no evidence that the Funds entrusted Bucci with the unpaid employer contributions. On appeal, the Funds fail to point to any provision in the trust agreements or any other authority demonstrating that the unpaid employer contributions were entrusted to Bucci. The court agrees with the bankruptcy court that a breach of contract, without more, is not embezzlement.

## III.

For these reasons, we affirm.